UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD
2022 MSPB 31

Docket No. DC-0432-14-0557-I-1

**Marguerite Pridgen,**

**Appellant,**

**v.**

**Office of Management and Budget,**

**Agency.**

September 12, 2022

Marguerite Pridgen, Washington, D.C., pro se.

Ashley Darbo and Mide Famuyiwa, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**OPINION AND ORDER**

¶1 The appellant has filed a petition for review of the initial decision that affirmed her performance-based removal under 5 U.S.C. chapter 43. For the reasons discussed below, we GRANT the appellant's petition for review. We REVERSE IN PART and AFFIRM IN PART the initial decision, REVERSING the appellant's removal. We REMAND the case to the regional office for further adjudication of the appellant's claims of race, color, and disability discrimination, and retaliation for protected disclosures and activities, in accordance with this Opinion and Order.

BACKGROUND

¶2      The appellant was a GS-15 Policy Analyst for the agency's Office of Federal Financial Management.  Initial Appeal File (IAF), Tab 1 at 123, Tab 10 at 52, 377.[1]  This position involves a wide range of duties related to developing and implementing budgetary, legislative, and regulatory policy for the agency and the President.  IAF, Tab 10 at 378, Tab 38 at 3.

¶3      Beginning in March 2010, the appellant requested several accommodations for her chronic colitis and chronic rhinitis.  IAF, Tab 31 at 16-18, 28-31, 39-40, Tab 38 at 3.  She contacted an equal employment opportunity (EEO) counselor in June 2010 to file an informal complaint, IAF, Tab 1 at 109, and in September 2010, she filed a formal EEO complaint alleging discrimination based on race, age, and disability, as well as retaliation for having earlier initiated the EEO process.  IAF, Tab 38 at 3.  Meanwhile, after communicating with the appellant regarding her needs, the agency provided her with an air purifier and constructed a new office space that would meet her medical requirements.  IAF, Tab 31 at 16-17, 28-31, 34-35, 37, 41.  These accommodations were completed and made available to the appellant in November 2010.  *Id.* at 16-41.

¶4      In April 2011, the appellant filed an appeal with the Board.  *Pridgen v. Office of Management and Budget*, MSPB Docket No. DC-3443-11-0529-I-1, Initial Appeal File, Tab 1.  She alleged that the agency had tailored a vacancy announcement to favor a preferred candidate that effectively discriminated against her based on age, race, sex, and personal conduct.  Because the appellant had not alleged that she first sought corrective action from the Office of Special Counsel (OSC), the administrative judge issued an initial decision that dismissed the appeal for lack of jurisdiction, and the Board affirmed that finding.

---

[1] Because documents in the initial appeal and the agency file have various page numbers in the record, we have referred to the page numbers assigned by the Board's e-Appeal Online System.  IAF, Tabs 1, 10.

*Pridgen v. Office of Management and Budget*, 117 M.S.P.R. 665, ¶¶ 2, 4, 7-9 (2012).

¶5        In October 2011, the appellant contacted the EEO office to initiate a second complaint.  IAF, Tab 38 at 4.  Based on written statements the appellant provided to the EEO office, on November 7, 2011, the agency subsequently placed her on administrative leave "until further notice."   IAF, Tab 1 at 7, 14, 26, 38, 44, Tab 10  at 11-12,  Tab 38  at 4.   The  appellant  filed  another  informal  EEO complaint on November 17, 2011, and a formal complaint on December 19, 2011. IAF, Tab 38 at 4.

¶6        The appellant alleged that, meanwhile, after the Government Accountability Office (GAO) met with agency officials regarding an initiative to reform how it administered grants to comply more fully with the Federal Financial Assistance Management Improvement Act of 1999, Pub. L. No. 106-107, 113 Stat. 1486, she reported to GAO in November 2011 that the agency was delaying implementing the  grant  reform  agenda.    IAF,  Tab 54,  Hearing  Compact  Disc  (HCD) 1 at 26:25-27:20 (testimony of the appellant).  Specifically, she said she reported that "things were really delayed and things were not getting done that should have gotten done and no one was really providing any answers." *Id.*

¶7        The appellant's annual performance cycle was supposed to run from the beginning of April to the end of March 2012.  IAF, Tab 10 at 77.  However, because she was on an extended period of leave and not permitted to return to work until May 7, 2012, she missed much of the performance cycle.  IAF, Tab 1 at 10, 22.   In  June 2012,  the  appellant's  first-line  supervisor  presented  the appellant with a 90-day performance goals plan, apparently with the intent to extend the appellant's 2011-2012 performance cycle and provide her with a performance appraisal for that period.  IAF, Tab 10 at 53-54, 229-33.   The appellant expressed concerns with the goals in the plan, *id.* at 234, and the agency shifted to instead incorporate the goals from the 90-day plan into a 2012-2013 performance plan, *id.* at 53-54, 130.   On  August 29,  2012,  the  appellant's

first-line supervisor issued her the performance appraisal plan, which the appellant refused to sign because she believed it contained unrealistic goals. IAF, Tab 1 at 23, Tab 10 at 13, 217-27.

¶8        Next, the appellant alleged that in June 2012, she disclosed to the Offices of Inspector General (OIG) for various unidentified agencies, and to the Office of the Deputy Attorney General at the Department of Justice, that the agency "would not implement" its requirement to publish guidance on grant fraud disclosure under section 872 of the Duncan Hunter National Defense Authorization Act for Fiscal Year 2009 (NDAA for FY 2009), Pub. L. No. 110-417, § 872, 122 Stat. 4356, 4555-57 (2008) (codified as amended at 41 U.S.C. § 2313). IAF, Tab 1 at 16, 41; HCD 1 at 27:51-30:04 (testimony of the appellant). She further alleged that, upon informing her first-line supervisor of these disclosures on June 29, 2012, her supervisor criticized her, IAF, Tab 1 at 41, and directed her to set up phone calls with the offices she had contacted so the supervisor could retract the allegations, HCD 1 at 27:51-30:04 (testimony of the appellant).

¶9        On November 1, 2012, the appellant filed a second Board appeal. *Pridgen v. Office of Management and Budget*, MSPB Docket No. DC-3443-13-0096-I-1, Initial Appeal File (0096 IAF), Tab 1. The appellant alleged that the agency continued to retaliate against her for her prior EEO and OSC complaints. 0096 IAF, Tab 1 at 3-5. The administrative judge issued a jurisdictional show cause order on November 7, 2012. 0096 IAF, Tab 3 at 1. Soon thereafter, she communicated to the administrative judge that she was withdrawing her Board appeal, and on November 16, 2012, the administrative judge issued a decision, dismissing it as withdrawn. 0096 IAF, Tab 4 at 3, Tab 5, Initial Decision.

¶10       The appellant asserts that on November 10, 2012, she filed a complaint with OSC making the same allegations she raised in her withdrawn appeal. IAF, Tab 1 at 8, 17, 44, Tab 30 at 10, Tab 38 at 10. According to the appellant, OSC informed her on April 22, 2013, that it had decided to close her case. IAF, Tab 1

at 8. Meanwhile, on December 11, 2012, the appellant received a counseling letter from her supervisor for unsatisfactory performance. IAF, Tab 38 at 4. In March 2013, the appellant asked for dictation software to accommodate her carpal tunnel syndrome, which the agency provided. *Id.* ¶ 12.

¶11 The appellant alleges that on June 19, 2013, she filed a second complaint with OSC regarding retaliation for her disclosures about section 872 of the NDAA for FY 2009. IAF, Tab 1 at 8; HCD 1 at 27:21-27:51 (testimony of the appellant). She also alleges that her June 2013 OSC complaint included a disclosure that erroneous 2011 guidance from the agency's Controller resulted in billions of dollars in undisbursed balances not being returned to the Department of the Treasury, and that her first-line supervisor tried to have her cover up, including through congressional testimony, the fact that the guidance was the result of an agency error. IAF, Tab 1 at 8.

¶12 On June 26, 2013, the appellant's first-line supervisor gave the appellant a summary performance rating of unsatisfactory for the 2012-2013 performance cycle. IAF, Tab 38 at 4. On June 28, her supervisor placed the appellant on another 90-day performance improvement plan (PIP), this one from July 1 to September 30, 2013, during which time the appellant was to complete several specific tasks to demonstrate acceptable performance. IAF, Tab 10 at 77-91, 107. On January 10, 2014, the appellant's supervisor notified the appellant that she failed to demonstrate acceptable performance during the PIP, and she proposed the appellant's removal on that basis. *Id.* at 52-75. After the appellant responded to the proposal, her second-line supervisor issued a decision removing her effective March 7, 2014. *Id.* at 37-50.

¶13 The appellant then filed this Board appeal in which she contested the merits of the agency's action and raised affirmative defenses of discrimination based on race, color, national origin, age, and disability, as well as retaliation for her prior EEO activity, Board appeals, OSC complaints, and disclosures to other entities and OIGs. IAF, Tab 1, Tab 30 at 4-12, Tab 38 at 2, 5-14. During the course of

the appeal, she filed two motions to compel, which the administrative judge denied as untimely. IAF, Tab 23. After holding a hearing, the administrative judge issued an initial decision affirming the appellant's removal and finding that she failed to prove her affirmative defenses. IAF, Tab 56, Initial Decision (ID).

¶14 The appellant has filed a petition for review, challenging many of the administrative judge's findings. Petition for Review (PFR) File, Tab 3. The agency has filed a response to the petition for review, and the appellant has filed a reply to the agency's response. PFR File, Tabs 7-8.

## ANALYSIS

The agency failed to present substantial evidence that the appellant's performance was unacceptable in at least one critical element.

¶15 At the time the initial decision in this case was issued, the Board required an agency issuing a performance-based action under 5 U.S.C. chapter 43 to establish by substantial evidence that: (1) the Office of Personnel Management approved the agency's performance appraisal system; (2) the agency communicated to the appellant the performance standards and critical elements of her position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(c)(1); (4) the agency warned the appellant of the inadequacies of her performance during the appraisal period and gave her a reasonable opportunity to improve; and (5) the appellant's performance remained unacceptable in at least one critical element.[2] *White v. Department of Veterans Affairs*, 120 M.S.P.R.

---

[2] The administrative judge declined to consider the appellant's argument disputing the agency's assessment of her performance prior to the PIP. ID at 4. At the time she issued the initial decision, her analysis was consistent with the Board's case law that an agency taking an action under chapter 43 was not required to prove that an appellant's pre-PIP performance was unacceptable. *E.g.*, *Thompson v. Department of the Navy*, 89 M.S.P.R. 188, ¶ 19 (2001). After the initial decision was issued in this case, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) issued its decision in *Santos v. National Aeronautics & Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021). In *Santos*, the court disagreed with the Board's precedent on this issue and found that an agency taking an action under chapter 43 must prove that the employee's

405, ¶ 5 (2013). In this case, the administrative judge found that the agency proved all of these elements. ID at 5-16. As she did below, the appellant argues on review that performance tasks on her PIP were not related to her position's critical elements. IAF, Tab 1 at 15; PFR File, Tab 3 at 7-8. We agree.

¶16 A "critical element" is "a work assignment or responsibility of such importance that unacceptable performance on the element would result in a determination that an employee's overall performance is unacceptable." 5 C.F.R. § 430.203. An unsatisfactory rating in even one critical element will necessarily result in an unsatisfactory summary rating. 5 U.S.C. § 4301(3); 5 C.F.R. § 430.208(b)(1); *see Lovshin v. Department of the Navy*, 767 F.2d 826, 834 (Fed. Cir. 1985) (en banc) (explaining that "unacceptable performance" under chapter 43 is a "word of art" that is defined by 5 U.S.C. § 4301(3) and 5 C.F.R. § 430.203). The appellant's performance plan contained four "core competencies." IAF, Tab 10 at 218-25. It also contained a varying number of "strategic goals." *Id.* Here, the appellant's core competencies were equivalent to critical elements because an unsatisfactory rating in one core competency would result in an unsatisfactory summary rating. *Id.* at 96, 217-18. However, her strategic goals were not critical elements because unsatisfactory performance on a single strategic goal would not result in an unsatisfactory summary rating; rather, if an employee was rated as unsatisfactory on three or more of those goals, she then would receive an unsatisfactory summary rating. *Id.*

¶17 The agency removed the appellant for purportedly failing to achieve acceptable performance on tasks associated with two areas listed on her PIP:

performance before the PIP justified her placement on the PIP. *Id.* at 1360-61, 1363. Neither party has revisited on review the issue of whether the agency failed to prove its charge because it did not properly assess the appellant's performance when it decided to place her on a PIP. Because we find, as discussed below, that the agency did not otherwise meet its burden to prove the charge of unacceptable performance, we need not determine whether the *Santos* decision impacts the agency's proof of its charge.

Grants Workforce Development Initiative and USAspending.gov Data Quality Guidance Implementation. IAF, Tab 10 at 37-40, 52, 79, 86-89, 218, 222-23, Tab 32 at 5-10, 14-17. These areas were associated with the appellant's strategic, i.e., noncritical, goals. *Compare* IAF, Tab 10 at 79-86 (discussing in the appellant's PIP her 2012-2013 performance year deficiencies on various tasks), *and id.* at 221-23 (listing these tasks under the appellant's strategic goals in her 2012-2013 performance plan), *with id.* at 87-89 (setting new tasks for the same strategic goals on the PIP); *see* HCD 2, Track 1 at 1:56:42-1:58:06 (testimony of the appellant's first-line supervisor).

¶18    We find that, because the appellant's performance was not aligned with any core competency, the agency failed to prove by substantial evidence that her performance remained unacceptable in at least one critical element. *White*, 120 M.S.P.R. 405, ¶ 5. Accordingly, we reverse the appellant's removal and those portions of the initial decision that sustained it.[3] *See O'Neal v. Department of the Army*, 47 M.S.P.R. 433, 441-42 (1991) (reversing a chapter 43 removal when the agency did not prove that the appellant's performance warranted an unacceptable rating on a critical element as a whole).

In finding that the appellant did not prove race and color discrimination, the administrative judge viewed the appellant's comparator evidence too narrowly.

¶19    In her appeal, the appellant raised affirmative defenses of discrimination based on race, color, national origin, and age. IAF, Tab 1 at 25-27, Tab 38 at 6-8, 11. The administrative judge found that the appellant did not prove that these were motivating factors in her removal. ID at 22. The appellant does not challenge the findings concerning her age and national origin discrimination claims, and we will not revisit those claims here.

---

[3] In light of this finding, we do not reach the appellant's arguments regarding the agency's burden of proof, the administrative judge's factual findings as to other elements of the unacceptable performance charge, and the agency's alleged violation of the appellant's due process rights. PFR File, Tab 3 at 8, 13-31.

¶20     The substantive standard for Title VII claims in the Federal sector is set forth in 42 U.S.C. § 2000e-16, which provides that all personnel actions affecting covered employees "shall be made free from any discrimination based on race, color, religion, sex, or national origin." This broad prohibition of discrimination is commensurate with the high standards expected of the Federal Government as an employer. In *Babb v. Wilkie*, 140 S. Ct. 1168 (2020), the U.S. Supreme Court interpreted the identical statutory language in 29 U.S.C. § 633a, which prohibits Federal sector age discrimination. As the Court explained, "the Federal Government [is held to] a stricter standard than private employers or state and local governments. That is what the statutory language dictates, and if Congress had wanted to impose the same standard on all employers, it could have easily done so." *Babb*, 140 S. Ct. at 1176.

¶21     Considering this sweeping statutory language, the Court held that a plaintiff may prove a claim of age discrimination by showing that age discrimination "play[ed] any part in the way a decision [was] made." *Id.* at 1173-74. In other words, the statute does not require proof that an employment decision would have turned out differently if age had not been taken into account. *Id.* A finding that prohibited discrimination played "any part" in the contested action is the same as a finding of "motivating factor." *See Wingate v. U.S. Postal Service*, 118 M.S.P.R. 566, ¶ 7 (2012) (finding that a Federal employee may prove a violation of 29 U.S.C. § 633a(a) by establishing that age was "a factor" in a personnel action, even though it was not a "but-for" causation).[4]

---

[4] An important distinction between the motivating factor and "but-for" standards is that an appellant in a motivating factor regime need not fully rebut the agency's proffered motives as pretext. By contrast, under the "but-for" standard, the burden of persuasion always remains with the appellant. *See, e.g.*, *Gloetzner v. Lynch*, 225 F. Supp. 3d 1329, 1346 (N.D. Fla. 2016) ("The burden of persuasion always remains on the plaintiff in an [Age Discrimination in Employment Act (ADEA)] case to proffer evidence sufficient to permit a reasonable fact finder to conclude that the discriminatory animus was the "but-for" cause of the adverse employment action."). Therefore, certain courts have

¶22     But while an appellant who proves motivating factor and nothing more may be entitled to injunctive or other "forward-looking relief," to obtain the full measure of relief available under the statute, including status quo ante relief, compensatory damages, or other forms of relief related to the end result of an employment decision, he "must show that age discrimination was a but-for cause of the employment outcome." *Babb*, 140 S. Ct. at 1171, 1177-78.  The but-for causation standard does not require discrimination to be the sole cause of the contested action, only a necessary one.  There may be more than one but-for cause of a single employment action.  *Loberger v. Del-Jen Inc.*, 616 F. App'x 922, 930 (11th Cir. 2015) (finding that pretext means both the reason was false, and that discrimination was the real reason); *Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793, 801 (8th Cir. 2014) ("This is not to say that age must have been the *only* factor in the employer's decisionmaking process, but only that, as among several factors, age was the factor that made a difference."); *see also McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 282 n.10 (1976).

¶23     One may prove discrimination under these different standards of proof by various methods.  No one method is the exclusive path to a finding of liability.  We take the opportunity to explain the methods of proof by which an appellant may prove discrimination as an affirmative defense, and clarify *Savage v. Department of the Army*, 122 M.S.P.R. 612 (2015), and *Gardner v. Department of Veterans Affairs*, 123 M.S.P.R. 647 (2016), to the extent that they could be read to suggest otherwise.

---

considered the "but-for" standard to be more "onerous," often when they compare Federal and state law claims. *See, e.g.*, *Wojcik v. Costco Wholesale Corporation*, No. 3:13-CV-2314-D, 2015 WL 1511093 (N.D. Tex. 2015) (granting summary judgment on the plaintiff's ADEA claim but denying for state law claim as motivating factor standard was "more lenient"); *Bauers-Toy v. Clarence Central School District*, No. 10-CV-845, 2015 WL 13574309 (W.D.N.Y. 2015) (requiring plaintiff to separate age and sex claims because Title VII gender discrimination claim is subject to a more lenient motivating factor standard).

¶24       The methods by which an appellant may prove a claim of discrimination under Title VII are: (1) direct evidence; (2) circumstantial evidence, which may include (a) evidence of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn," also known as "convincing mosaic"; (b) comparator evidence, consisting of "evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic . . . on which an employer is forbidden to base a difference in treatment received systematically better treatment"; (c) evidence that the agency's stated reason for its action is "unworthy of belief, a mere pretext for discrimination" (i.e., the burden-shifting standard under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)); and (3) some combination of direct and indirect evidence. *Troupe v. May Department Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994); *see also Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 764-65 (7th Cir. 2016) (stating that "the use of disparate methods and the search for elusive [convincing] mosaics has complicated and sidetracked employment-discrimination litigation for many years" and explaining that *Troupe* used "mosaic" as a metaphor that was designed to displace the direct and indirect methods, rather than add a separate legal test to them). None of the above types of evidence, i.e., direct, "convincing mosaic," comparator, or pretext, will be needed in every case. "Each type of evidence," the Seventh Circuit explained in *Troupe*, "is sufficient by itself . . . to support a judgment for [the employee]; or they can be used together." *Id.* When an appellant raises an affirmative defense of disparate treatment discrimination under Title VII, the administrative judge should notify her of the various standards and methods of proof, including the respective levels of relief available

under each standard.[5] *See Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 17 (2015).

¶25 In *Savage*, 122 M.S.P.R. 612, ¶ 46, the Board held that, because it lacks summary judgment authority, the *McDonnell Douglas* framework has no application to Board proceedings. This statement is incorrect, and that aspect of *Savage* is overruled. The Supreme Court in *McDonnell Douglas*, 411 U.S. at 802-04, set forth the "order and allocation of proof" in an employment discrimination case, not only during pretrial proceedings but also during trial. *See Capaci v. Katz & Besthoff, Inc.*, 711 F.2d 647, 663 (5th Cir. 1983). Although *McDonnell Douglas* and its progeny outline the order and allocation of proof as a three-stage process, presenting evidence of discrimination does not contemplate a trifurcated trial, but simply sets forth the proper method of analysis after the relevant evidence has been introduced. *Johnson v. Transportation Agency, Santa Clara County, California*, 770 F.2d 752, 761 (9th Cir. 1984). "The prima facie case method established in *McDonnell Douglas* was 'never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'" *U.S. Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715 (1983) (quoting *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978)).

¶26 Turning to the facts of this case, the appellant, on review, renews her argument that the agency favored her "non-disabled, non-African American, [and] non-Black" coworker in the assigning and evaluating of work. PFR File, Tab 3 at 5-7; IAF, Tab 38 at 6. In her initial decision, the administrative judge found that this coworker, the only other GS-15 Policy Analyst who reported to the same

---

[5] In particular, appellants must be instructed that to obtain the full panoply of relief under Title VII, they must prove "but-for" discrimination regarding the end result of an employment decision, and it may be proven through any of the methods stated above.

first-line supervisor as the appellant, was not a valid comparator because the supervisor assigned him different tasks. ID at 22 n.11. The appellant argues that the administrative judge, in making this finding, defined "similarly situated" too narrowly. PFR File, Tab 1 at 5-8. We agree.

¶27    As explained above, one way an appellant may establish a discrimination claim is through comparator evidence, or evidence relating to the treatment of similarly situated employees. *See Fox v. Department of the Army*, 120 M.S.P.R. 529, ¶ 37 (2014) (discussing the use of comparator evidence in connection with a disability discrimination claim). To be similarly situated, comparators must have reported to the same supervisor, been subjected to the same standards governing discipline, and engaged in conduct similar to the appellant's without differentiating or mitigating circumstances. *Id.*, ¶ 37. The appellant and her coworker reported to the same first-line supervisor and had the same core competencies and strategic goals. IAF, Tab 10 at 217-27, Tab 52 at 284-92. However, as part of their annual performance plans, the supervisor assigned each of them different tasks related to the strategic goals. IAF, Tab 10 at 220-25, Tab 52 at 288-92; HCD 2, Track 1 at 1:30:39-1:31:14 (testimony of the appellant's first-line supervisor). According to the supervisor, she assigned different tasks to the appellant and her coworker because of the need to divide work amongst her small staff. HCD 2, Track 1 at 1:30:39-1:31:14 (testimony of the appellant's first-line supervisor). The administrative judge made no finding as to whether the assignments were the result of discrimination.

¶28    As set forth above, in a performance-based action, the agency has the burden to prove that it provided the appellant with a reasonable opportunity to improve. *White*, 120 M.S.P.R. 405, ¶ 5. The employee's right to a reasonable opportunity to improve is a substantive right and a necessary prerequisite to all chapter 43 actions. *Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 8 (2013). In determining whether the agency has afforded the appellant this opportunity, relevant factors include the nature of the duties and responsibilities

of the appellant's position, including whether assignments of work were made in a discriminatory manner. *Id.*; *see Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 43 (2010) (considering in a chapter 43 action the appellant's allegations of national origin discrimination that non-Chinese employees in the appellant's position were not required to perform the same types of assignments as the appellant).

¶29     We find that as an employee in the same position, assigned work by the same supervisor and subject to the same general standards governing performance, the appellant's coworker was similarly situated to the appellant for purposes of determining whether the tasks assigned to the appellant during the PIP period were the product of discrimination.  Therefore, we remand the appellant's claims of discrimination based on race and color to the administrative judge to make further findings as to whether the appellant met her burden to prove her assignments were the result of discrimination.[6]  *See Barnes v. U.S. Postal Service*, 49 M.S.P.R. 21, 26-27 (1991) (remanding for an administrative judge to make credibility determinations regarding discrimination claims).  On remand, the administrative judge should consider this and any other probative evidence of race and color discrimination according to the standards set forth above.

The appellant failed to prove that the agency retaliated against her for her prior EEO activity.

¶30     Claims of retaliation for opposing discrimination in violation of Title VII are analyzed under the same framework used for Title VII discrimination claims. *Foster v. University of Maryland-Eastern Shore*, 787 F.3d 243, 248-49 (4th Cir.

---

[6] On remand, the administrative judge is not required to address the appellant's argument that "another [unidentified] agency employee" who reported to a different supervisor and allegedly was on a PIP "could have been a comparator."  PFR File, Tab 3 at 6-7; *see Fox*, 120 M.S.P.R. 529, ¶ 37 (finding that employees that reported to different supervisors were not similarly situated to the appellant).

2015). The appellant alleged that her removal was in retaliation for her 2010 and 2011 EEO complaints, and her 2011 and 2012 Board appeals.[7] IAF, Tab 1 at 35-36, 43-46, Tab 38 at 8-11. On review, she points to the "suspicious timing" of the agency's actions, such as reducing her responsibility and reassigning her work in 2010 and 2011, placing her on administrative leave in 2012, and taking performance-based actions beginning in 2012 that culminated in her removal effective 2014. PFR File, Tab 3 at 9-13. The administrative judge considered these allegations, but ultimately found the appellant's claims were unproven. For example, she found that the agency placed the appellant on administrative leave, not due to retaliatory animus, but because of safety reasons since she stated in writing to an EEO counselor she might "kill [herself] or someone else." ID at 20; IAF, Tab 10 at 260, 266. The administrative judge found the appellant's denial that she made this statement was not credible. ID at 20.

¶31    The administrative judge also found that the appellant's first-line supervisor (the proposing official) credibly denied retaliatory intent despite being named in one of the appellant's EEO complaints. ID at 22 n.10. In addition, she considered the testimony of the second-line supervisor (the deciding official) and concluded he did not retaliate against the appellant based on her reasonable accommodation requests. ID at 21-22. However, the administrative judge did not make a specific credibility finding as to the deciding official's motive to retaliate against the appellant for her other EEO activity. Nonetheless, we find that she implicitly concluded, after considering the appellant's "circumstantial evidence regarding EEO retaliation," that the appellant did not establish that it was a motivating factor in her removal. ID at 22. We afford these explicit and implicit credibility-based factual findings deference. *Purifoy v. Department of Veterans*

---

[7] To the extent that the appellant alleges that her prior EEO complaints raised allegations of disability discrimination, those claims will be addressed below, in connection with her other disability discrimination claims.

*Affairs*, [838 F.3d 1367](), 1373 (Fed. Cir. 2016) (explaining that the Board must defer not only to an administrative judge's credibility findings that explicitly rely on witness demeanor, but also those that are "intertwined with issues of credibility and an analysis of [a witness's] demeanor at trial") (citing *Haebe v. Department of Justice*, [288 F.3d 1288](), 1299 (Fed. Cir. 2002) (stating that "the [Board] is not free to overturn an administrative judge's demeanor-based credibility findings merely because it disagrees with those findings")). The appellant's recitation of the evidence on review does not persuade us otherwise.[8] PFR File, Tab 3 at 9-13; *see Broughton v. Department of Health & Human Services*, [33 M.S.P.R. 357](), 359 (1987) (observing that merely rearguing factual

---

[8] The appellant argued below that her 2012-2013 performance plan and her unsatisfactory performance rating for that year were the result of EEO reprisal. IAF, Tab 10 at 107, Tab 30 at 8-11, Tab 38 at 10-11. While the administrative judge, in the initial decision, generally found the appellant's claims regarding incidents arising prior to her placement on the PIP were not motivated by retaliation or discrimination, she did not specifically address the appellant's claim regarding her previous performance plan and rating. ID at 4, 16-17, 19-22. On remand, the administrative judge should provide the parties with an opportunity to present additional evidence and argument concerning the appellant's affirmative defenses related to the agency's determination that her pre-PIP performance was unsatisfactory. In *Santos*, 990 F.3d at 1363-64, the Federal Circuit held that the Board must consider this issue in the context of an appellant's affirmative defense when, as here, the validity of the agency's proffered reason for taking the chapter 43 action is a factor in analyzing that affirmative defense. *See id.* at 1363-64 (remanding to the Board the appellant's claim under the Uniformed Services Employment and Reemployment Rights Act of 1994 (codified as amended at [38 U.S.C. §§ 4301]()-4335)); *Savage*, [122 M.S.P.R. 612](), ¶ 41 (finding that retaliation for prior EEO activity is established if a prohibited consideration was a motivating factor in the contested personnel action, even if it was not the only reason). The administrative judge must develop the record evidence as necessary and appropriate, while considering administrative efficiency and fairness to the parties, *Ellshoff v. Department of the Interior*, [76 M.S.P.R. 54](), 74 (1997), and address any argument or evidence regarding the appellant's pre-PIP performance in the remand initial decision, *Spithaler v. Office of Personnel Management*, [1 M.S.P.R. 587](), 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).

issues already raised and properly resolved by the administrative judge below does not establish a basis for review).

¶32    The administrative judge separately addressed the appellant's allegations of retaliation for filing prior Board appeals, stating that she was required to show that (1) she engaged in protected activity, (2) the accused official knew of the activity, (3) the adverse action under review could have been retaliation under the circumstances, and (4) there was a genuine nexus between the alleged retaliation and the adverse action.  ID at 28 (citing *Warren v. Department of the Army*, 804 F.2d 654, 658 (Fed. Cir. 1986)).  This standard applies to alleged retaliation for "the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation" in which an appellant did not allege EEO discrimination or retaliation, or seek to remedy whistleblower reprisal.    5 U.S.C. § 2302(b)(9)(A)(ii); *Mattison v. Department of Veterans Affairs*, 123 M.S.P.R. 492, ¶ 8 (2016).  The use of this standard was in error, because the appellant's underlying appeals raised claims of discrimination and retaliation for engaging in EEO activity.  IAF, Tab 38 at 9-10; *Pridgen*, 117 M.S.P.R. 665, ¶ 7; 0096 IAF, Tab 1 at 5.  Therefore, the standard for Title VII discrimination claims applies.

¶33    The administrative judge found that the appellant did not prove that the agency retaliated against her for filing Board appeals because she failed to prove that her first- or second-line supervisors were aware of her 2011 and 2012 Board appeals.  ID at 28-29; *see Wingate*, 118 M.S.P.R. 566, ¶ 6 (determining that there was no retaliation for prior EEO activity when the administrative judge found no evidence that relevant agency officials knew of the appellant's EEO activity or were influenced by those who did).  Neither party challenges this finding on review.  We affirm the administrative judge's findings regarding the appellant's EEO retaliation claims as modified to find that the appellant failed to prove these

previous Board appeals were motivating factors in her removal.[9] *See Nash v. U.S. Postal Service*, EEOC Appeal No. 01900992, 1990 WL 1111738, at *2 (Apr. 26, 1990).

<u>In finding that the appellant did not prove discrimination under the Americans with Disabilities Act (ADA), the administrative judge viewed the appellant's comparator evidence too narrowly.</u>

¶34    The appellant raised claims of both disparate treatment disability discrimination and retaliation for engaging in activity protected by the Rehabilitation Act of 1973 (the Rehabilitation Act). IAF, Tab 38 at 8-9, 11-14; ID at 2. The administrative judge found that the appellant did not meet her burden to prove either of these claims.[10] ID at 22. We discuss each of these claims in turn.

> *The administrative judge should have determined whether the appellant's disability was a motivating factor in her PIP work assignments and, if so, whether the agency would have removed the appellant regardless of the allegedly discriminatory assignments.*

¶35    The Board adjudicates claims of disability discrimination raised in connection with an otherwise appealable action under the substantive standards of section 501 of the Rehabilitation Act. The standards under the ADA, as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADAAA), have

---

[9] Although not entirely clear, it appears that the appellant also raised a claim of retaliation for requesting reasonable accommodation in one of her prior Board appeals. 0096 IAF, Tab 1 at 5. To the extent that the appellant raised such a claim, it is addressed below.

[10] To the extent that the appellant raises a claim of denial of reasonable accommodation for the first time on review, we decline to address it. PFR File, Tab 3 at 9, 11-12; IAF, Tab 38 at 11, Tab 44 at 10-12; ID at 18; HCD 1 at 4:55-5:50 (containing a discussion on the record as to the nature of the appellant's disability discrimination claim); *see Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (explaining that the Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence).

been incorporated by reference into the Rehabilitation Act, and the Board applies them to determine whether there has been a Rehabilitation Act violation. 29 U.S.C. § 791(f); *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 n.3 (2014). The ADA originally prohibited discrimination "because of" an individual's disability; Congress changed this language in the ADAAA to prohibit discrimination "on the basis of disability." ADAAA, Pub. L. No. 110-325, § 5(a), 122 Stat. 3553, 3557. Because the ADAAA went into effect prior to the events in this matter, we apply the standards set forth in the ADA as amended.

¶36 The administrative judge found that the appellant proved she was regarded as disabled, and thus was an individual with a disability for purposes of the ADA. ID at 19. We clarify that the appellant met her burden to prove she was an individual with a disability by proving that she was actually disabled.

¶37 To prove disability discrimination under the ADA, the appellant must establish that she is an individual with a disability as that term is defined in the ADA and Equal Employment Opportunity Commission (EEOC) regulations. *Thome v. Department of Homeland Security*, 122 M.S.P.R. 315, ¶ 24 (2015). She may prove that she has a disability by showing that she: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1); *Thome*, 122 M.S.P.R. 315, ¶ 24; 29 C.F.R. § 1630.2(g)(1). Major life activities include the operation of major bodily functions, such as bowel functions. 42 U.S.C. § 12102(2)(B); 29 C.F.R. § 1630.2(i)(1)(ii). The determination of whether a condition is substantially limiting is made by comparing the ability of the allegedly disabled individual to the abilities of "most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). The "substantially limits" standard is not "demanding," and is intended to "be construed broadly in favor of expansive coverage." 29 C.F.R. § 1630.2(j)(1)(i).

¶38    The appellant suffers from colitis, carpal tunnel syndrome, and rhinitis. IAF, Tab 31 at 27, 39, Tab 38 at 3-4.  Colitis is an inflammation of the colon, which is a portion of the bowel.  Stedman's Medical Dictionary 247, 408 (28th ed. 2006).  The appellant provided undisputed evidence that, as a result of her colitis, she had to be within 50 feet of a restroom to accommodate her need to use it "frequently."  IAF, Tab 31 at 29, 31, 34, 41.  The agency constructed office space for the appellant so that she had the necessary proximity to the restroom. *Id.* at 41.  Under these circumstances, we find that the appellant met her burden to prove she was an individual with a medical condition that substantially limits her bowel function as compared with most people in the general population.  As such, she is an individual with an actual disability.[11]

¶39    As with the appellant's other discrimination claims, the administrative judge concluded that the appellant failed to prove that her disability was a motivating factor in her removal.  ID at 20-22.  The appellant appears to dispute this finding.  PFR File, Tab 3 at 5-7.

¶40    The EEOC and Federal circuit courts have disagreed regarding the level of causation an employee must meet to prove discrimination "on the basis of disability." *See, e.g.*, *Natofsky v. City of New York*, 921 F.3d 337, 350 (2d Cir. 2019) ("We conclude that 'on the basis of' in the ADA requires a but-for causation standard."); *Monroe v. Indiana Department of Transportation*, 871 F.3d

---

[11] The ADA prohibits disparate treatment discrimination against a "qualified individual on the basis of disability."  42 U.S.C. § 12112(a).  The record reflects that the appellant blamed her first-line supervisor and others, rather than her medical conditions, for any performance deficiencies while on the PIP.  HCD 1 at 1:04:56-1:16:40 (testimony of the appellant); IAF, Tab 10 at 44-47, Tab 38 at 11; ID at 18.  The agency essentially agreed with the appellant that her alleged performance deficiencies were not related to her medical conditions.  HCD 2, Track 2 at 1:22:44-1:26:24 (testimony of the appellant's second-line supervisor).  Therefore, because it appears undisputed that the appellant was "qualified," i.e., that she could perform the essential functions of her position with or without reasonable accommodation, 42 U.S.C. § 12111(8), we do not address that issue further here.

495, 503-04 (7th Cir. 2017) (using the "but-for" causation standard for a case arising after the ADAAA); *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 757 n.6 (8th Cir. 2016) (declining to resolve whether a motivating factor or "but-for" causation standard applies to disability discrimination claims under the ADA as amended); *Gentry v. East West Partners Club Management Co., Inc.*, 816 F.3d 228, 235-36 (4th Cir. 2016) (applying a "but-for" causation standard to a disability discrimination claim); *Hoffman v. Baylor Health Care System*, 597 F. App'x 231, 235 n.12 (5th Cir. 2015) (applying a motivating factor causation standard); *Renee L. v. Department of Commerce*, EEOC Appeal No. 0120141032, 2017 WL 1315387, at *17 (Mar. 29, 2017) (applying a motivating factor causation standard). The Board generally defers to the EEOC on issues of substantive discrimination law unless the EEOC's decision rests on civil service law for its support or is so unreasonable that it amounts to a violation of civil service law. *Southerland v. Department of Defense*, 119 M.S.P.R. 566, ¶ 20 (2013). In light of the split among the circuit courts, we find it appropriate to defer to the EEOC's use of a motivating factor causation standard. However, as explained below, to obtain full relief, an appellant must show that disability discrimination was a but-for cause of the personnel action.

¶41    The administrative judge determined below that the appellant was entitled to some relief if she showed that her disability was a motivating factor in her removal, even if other factors also motivated the removal. ID at 19, 22. She found that the appellant did not meet that burden. ID at 22. The appellant argues, as discussed above, that her coworker, who she claims was not disabled, was treated more favorably for assigning and evaluating work. PFR File, Tab 3 at 5-7; IAF, Tab 38 at 6. While we agree with the administrative judge's applying the motivating factor causation standard, as explained above, the appellant's coworker was similarly situated to the appellant because he was employed in the same position, assigned work by the same supervisor, and subjected to the same general standards governing performance. *See Fox*,

[120 M.S.P.R. 529](), ¶ 37. Thus, we must remand for the administrative judge to consider the appellant's claim that she received less favorable assignments than her coworker did due to her disability.

¶42 In analyzing the appellant's disparate treatment disability discrimination claim, the administrative judge shall apply the same standards of proof set forth above regarding the appellant's Title VII claims, and the appellant may use the same methods of proof applicable to such claims. *See Hoffman v. Caterpillar, Inc.*, [256 F.3d 568](), 572 (7th Cir. 2001); *Davis v. Department of the Treasury*, EEOC Appeal No. 01A10591, 2002 WL 31014612, at *2 (Aug. 30, 2002). Also, as with Title VII claims, the remedies available for disparate treatment disability discrimination will vary based on the level of causation. When disability discrimination is a but-for cause of the personnel action, full relief, including reinstatement, back pay, and damages, is available. When disability discrimination is merely a motivating factor, but not a but-for cause, injunctive or other forward-looking relief is available.[12] *See Southerland*, [119 M.S.P.R. 566](), ¶¶ 23-25; *Brenton W. v. Department of Veterans Affairs*, EEOC Appeal No. 2020000957, 2021 WL 3792957, at *3 (Aug. 4, 2021); *see also* [42 U.S.C. § 12117]()(a) (incorporating, by reference, the remedy provisions of Title VII into the ADA).

> *The appellant did not prove that her protected activities of filing disability complaints and requesting reasonable accommodation were "but-for" causes of her removal.*

¶43 As to the appellant's claims of retaliation for engaging in activity protected by the Rehabilitation Act, the administrative judge analyzed those claims in

---

[12] In this matter, we have already reversed the removal action on other grounds and ordered the agency to restore the appellant to her former position and provide her with appropriate back pay. However, she may obtain further relief if she proves her discrimination claims on remand. *See Wrighten v. Office of Personnel Management*, [89 M.S.P.R. 163](), ¶¶ 5-10 (2001).

conjunction with the appellant's Title VII claims. ID at 16-22. She concluded that the appellant did not meet her burden to prove that her requests for reasonable accommodation and EEO complaints were motivating factors in her removal. *Id.* On review, the appellant again suggests that the agency's actions were suspiciously close in time to her 2010 requests for accommodation and 2010 EEO complaint "regarding denied accommodations." PFR File, Tab 3 at 9-13. While we disagree with the appellant, we modify the administrative judge's analysis of the appellant's retaliation claim to reflect the proper causation standard.

¶44     Separate from its prohibition on disparate treatment disability discrimination, the ADA has an anti-retaliation provision, which prohibits discriminating against any individual "because such individual" has engaged in protected activity. 42 U.S.C. § 12203(a); *Southerland*, 119 M.S.P.R. 566, ¶ 21. Both requesting a reasonable accommodation and opposing disability discrimination are activities protected by the Rehabilitation Act. *Southerland*, 119 M.S.P.R. 566, ¶ 21.

¶45     In *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 351-53 (2013), the U.S. Supreme Court interpreted similar language from Title VII's anti-retaliation provision applicable to private sector claims. The Court determined that the requirement to prove the employer's actions occurred "because" of the employee's protected activity imposed a "but-for" causation standard. *Id.* (interpreting 42 U.S.C. § 2000e-3(a)). The Court rejected using a mixed-motive analysis, explaining that "but-for" causation "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."[13] *Id.* at 360-62.

---

[13] In *Nassar*, the U.S. Supreme Court distinguished between the anti-retaliation provisions of Title VII, which it determined required "but-for" causation, and the disparate treatment discrimination provisions of Title VII, for which it found motivating

¶46        We find *Nassar* provides useful guidance in interpreting the provision at issue here.  The language in the ADA's anti-retaliation provision is virtually identical to the language analyzed by the Court in *Nassar*, including the prohibition on discrimination "because" of protected activity.  42 U.S.C. § 12203(a); *see Nassar*, 570 U.S. at 353-54, 357 (observing that Congress's decision to enact an anti-retaliation subsection in Title VII separate from the subsection prohibiting disparate treatment discrimination required that courts apply the standard of causation for retaliation claims stated in the anti-retaliation provision, and observing that the ADA has a similar structure).  Thus, like Federal circuit courts which have considered this issue, we find that the "but-for" standard is applicable to ADA retaliation claims.  *See T.B. ex rel. Brenneise v. San Diego Unified School District*, 806 F.3d 451, 473 (9th Cir. 2015) (finding, in light of *Nassar*, that the "but-for" causation standard applies to ADA retaliation claims); *Equal Employment Opportunity Commission v. Ford Motor Company*, 782 F.3d 753, 767 (6th Cir. 2015) (en banc) (citing *Nassar* for the requirement that a plaintiff claiming under the ADA retaliation for filing a disability discrimination claim must prove that her protected activity was the "but-for" cause of the adverse employment action); *Feist v. State of Louisiana, Department of Justice, Office of the Attorney General*, 730 F.3d 450, 454 (5th Cir. 2013) (explaining that to avoid summary judgment in a retaliation case under the ADA, a plaintiff must raise a factual conflict regarding whether retaliation was the "but-for" cause of the employer's action); *Palmquist v. Shinseki*, 689 F.3d 66, 68, 72-77 (1st Cir. 2012) (concluding that a claim of retaliation for activity protected under the Rehabilitation Act requires proof of "but-for" causation).

¶47        Therefore, we overrule the Board's finding in *Southerland*, which was issued days before the U.S. Supreme Court issued *Nassar*, that a lesser standard is

factor causation to be appropriate.  570 U.S. at 343, 360.  We follow the Court's findings on these issues.

appropriate for Rehabilitation Act retaliation claims. *Southerland*, 119 M.S.P.R. 566, ¶¶ 18-22 (finding that a mixed-motive analysis applies to claims of disparate treatment discrimination under the ADA by relying on an EEOC case applying the mixed-motive standard to an ADA retaliation claim). We also overrule the finding that an agency can avoid liability by proving by clear and convincing evidence that it would have taken the same action absent an improper motive, *id.*, ¶¶ 23-25, as such a construct would be applicable only for a motivating factor analysis. If prior EEO activity is a "but-for" cause of retaliation, by definition, there is no other proper reason for that action. In making its findings in *Southerland*, the Board relied on the EEOC's interpretation of substantive discrimination law. *Id.*, ¶¶ 20-21, 24-25. However, in light of *Nassar*, we find that the Supreme Court has effectively overruled the EEOC's interpretation.

¶48        Returning to the appellant's argument, we are not persuaded that the timing of the appellant's 2014 removal is sufficient to establish that the agency would not have removed her absent her 2010 protected activity. PFR File, Tab 3 at 9-13. The administrative judge considered the appellant's allegations regarding the timing of her removal, as well as other events that preceded it. As discussed above in connection with the appellant's Title VII retaliation claims, the administrative judge was not persuaded by this evidence of "suspicious timing." ID at 19-22. Other than holding the appellant to the lower motivating factor standard, we discern no error in her reasoning. ID at 22. Therefore, we affirm the administrative judge's finding, as modified, to find that the appellant did not prove that her protected activity was the "but-for" cause of her removal.

We find that the appellant made protected disclosures and remand the appellant's claim of reprisal for activity protected by 5 U.S.C. § 2302(b)(9)(C).

> *The Whistleblower Protection Act (WPA) and the burden-shifting framework under 5 U.S.C. § 1221(e) apply to the appellant's claims of reprisal for activities and disclosures in this chapter 43 appeal.*

¶49        When whistleblower retaliation claims are made in the context of an otherwise appealable action, as here, the appellant must prove by preponderant

evidence that she made a protected disclosure or engaged in protected activity and that the disclosure or activity was a contributing factor in the personnel action at issue. If the appellant makes this showing, the burden shifts to the agency to prove by clear and convincing evidence that it would have taken the personnel action absent the protected disclosure or activity. *See* 5 U.S.C. § 1221(e); *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶¶ 13-14 (2015); *Gonzalez v. Department of Transportation*, 109 M.S.P.R. 250, ¶ 16 (2008) (construing a whistleblower reprisal claim in the context of a chapter 43 appeal).

¶50   The agency removed the appellant after the December 27, 2012 effective date of the Whistleblower Protection Enhancement Act of 2012 (WPEA). Pub. L. No. 112-199, § 202, 126 Stat. 1465, 1476. However, some of her protected activities occurred before that date. As is relevant here, activity under 5 U.S.C. § 2302(b)(9)(C), namely, disclosures made to OSC or an OIG, was protected prior to the passage of the WPEA, but the WPEA amended the WPA to make retaliation for such activity appealable to the Board. *Corthell v. Department of Homeland Security*, 123 M.S.P.R. 417, ¶¶ 7-12 (2016) (recognizing that, following the passage of the WPEA, the Board has individual right of action (IRA) jurisdiction over a claim of retaliation for activity protected under what is now 5 U.S.C. § 2302(b)(9)(C)); *see* WPA, Pub. L. No. 101-12, § 4(b), 103 Stat. 16, 32. Therefore, we must determine whether the WPEA's provisions would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties as to transactions already completed. *See Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994) (setting forth this standard for determining whether a statute that is silent as to its application of past events applies to matters that occurred before its enactment).

¶51   Here, we find that the relevant event in this context is the appellant's removal, which was effected after the WPEA's effective date. The agency, therefore, knew of the parties' rights, liabilities, and duties under the WPEA when it acted to remove the appellant. Thus, the WPEA should be applied to this

matter because when the agency removed the appellant, the new right to seek relief for violations of 5 U.S.C. § 2302(b)(9)(C) before the Board was already in place. *See Landgraf*, 511 U.S. at 269-72 (explaining that the presumption against statutory retroactivity arises if "the new provision attaches new legal consequences to events completed before its enactment"). Therefore, the burden-shifting scheme set forth above applies here as we analyze the appellant's allegations of whistleblowing activity.

>   *The administrative judge incorrectly concluded that the appellant did not make any protected disclosures.*

¶52    Protected whistleblowing occurs when an appellant makes a disclosure that she reasonably believes evidences a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety. 5 U.S.C. § 2302(b)(8); *see Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 5 (2013) (discussing this burden at the jurisdictional stage of an IRA appeal). The proper test for determining whether an employee had a reasonable belief that her disclosures were protected is whether a disinterested observer with knowledge of the essential facts known to, and readily ascertainable by, the employee could reasonably conclude that the actions evidenced a violation of a law, rule, or regulation, or one of the other conditions set forth in 5 U.S.C. § 2302(b)(8). *Mudd*, 120 M.S.P.R. 365, ¶ 5.

¶53    In the initial decision, the administrative judge found that the appellant provided insufficient information to prove that she had a reasonable belief of agency wrongdoing concerning her alleged June 2012 disclosure to the Deputy Attorney General's Office that the agency violated section 872(a) of the NDAA for FY 2009.[14] ID at 23-24. The appellant argues that the administrative judge

---

[14] The administrative judge did not address the filings with various OIGs here, and also appears to have conflated these June 2012 disclosures with the appellant's protected

erred in requiring "a de minimus [sic] level of specificity" as to this disclosure. PFR File, Tab 3 at 32-33.

¶54    We disagree with the administrative judge's determinations. First, the appellant asserted that she made disclosures pertaining to section 872(a) of the NDAA for FY 2009. Section 872(a) provides that, "[s]ubject to the authority, direction, and control of the Director of the Office of Management and Budget, the Administrator of General Services shall establish . . . and maintain a database of information regarding the integrity and performance" of those awarded Federal contracts or grants. Pub. L. No. 110-417, § 872(a), 122 Stat. 4356, 4555-56. Section 872(f) requires that the Federal Acquisition Regulation be amended regarding the requirements for those with more than $10,000,000 in Federal agency contracts or grants. § 872(f), 122 Stat. 4557. Both tasks were to be completed within 1 year of the law's October 14, 2008 enactment date. The entire law was to be accompanied by "such regulations as may be necessary to carry out" section 872. § 872(g), 122 Stat. 4557. At the hearing, the appellant testified that in 2010, the General Services Administration (GSA) had set up the required reporting system for grants (the Federal Awardee Performance and Integrity Information System, or FAPIIS). HCD 1 at 29:08-31:18 (testimony of the appellant). She disclosed, however, that this particular statute had not been implemented and that her agency "was not complying with [F]ederal law requiring the [agency] to issue guidance to other agencies so that they do not inadvertently make grants to inappropriate grantees." *Id.*; IAF, Tab 1 at 16, 41. On review, the appellant elaborates that GSA and the Office of General Counsel at the appellant's agency had determined that the authority to promulgate the

---

activity of filing a June 2013 complaint with OSC. ID at 23-25. We have separately analyzed the appellant's OSC complaint below because it is a protected activity under 5 U.S.C. § 2302(b)(9)(C). Therefore, we modify the initial decision to the extent that it referred to the alleged protected disclosure as having been made to OSC.

implementing regulations rested with the appellant's agency, not with GSA.  PFR File, Tab 3 at 32.

¶55    Documentation supplied by the agency supports the appellant's alleged belief.  Specifically, the agency file includes a March 21, 2012 email from the Office of the Deputy Attorney General to the appellant's agency with the subject line "mandatory grant fraud reg" which inquires about the status of the regulation, noting an "extensive back-and-forth on this rule."  IAF, Tab 10 at 411.  When the appellant's first-line supervisor forwarded the inquiry to the appellant in late May 2012, the appellant responded:

> The last email exchange I saw indicated that [agency] senior management would not clear and publish the package in response to your recommendation to delay indefinitely the issuance of the FAPIIS rule.  In those emails your justification ranged from budgetary concerns to insufficient FAPIIS usage.  Yesterday you provided me with a different rationale: It was stalled for inclusion in the "Supercircular."

*Id.* at 410.  The appellant made her disclosure to the Office of the Deputy Attorney General and various OIGs sometime the following month.

¶56    We conclude that the alleged facts in the initial appeal and in the appellant's hearing testimony are sufficiently specific to find that a disinterested observer with knowledge of the essential facts known to, and readily ascertainable by, the appellant could reasonably conclude that the actions evidenced a violation of section 872's requirement for the promulgation of regulatory guidance, and therefore that the appellant had a reasonable belief of such.  Accordingly, we find that these disclosures to the Office of the Deputy Attorney General and various OIGs in June 2012 were protected.

¶57    The appellant also alleged that she made a disclosure in November 2011 to GAO that the agency delayed implementing reforms under the Federal Financial Assistance Management Improvement Act of 1999, more commonly referred to as Public Law 106-107.  HCD 1 at 26:25-27:20 (testimony of the appellant).  The administrative judge found that the appellant's disclosures about this law were

"even less specific" than those related to section 872 of the NDAA for FY 2009, and thus were not protected under 5 U.S.C. § 2302(b)(8). ID at 24 n.12. We disagree. Among other purposes, Public Law 106-107 aimed to "facilitate greater coordination among those responsible for delivering [federal grant] services." Pub. L. No. 106-107, § 3, 113 Stat. 1486, 1486. At the time of the appellant's disclosure, GAO had published four reports on implementation of the measure.[15] A July 2009 report had recommended that the agency work with the Department of Health and Human Services (HHS) to take a number of steps aimed at complying with Public Law 106-107.[16] The most recent report, issued 6 months before the appellant's disclosure, found that HHS's ability to adopt the remaining prior GAO recommendations hinged on the agency's implementing a new Federal grants governance model.[17] The agency took a provisional step 1 month before the appellant's disclosure when it created a new body tasked with overseeing the development of Federal grants management policy.[18] However, it is clear from later GAO work that, even after creating the new body, many questions remained unresolved.[19] The appellant testified that following a meeting GAO held with different agency officials about what she called the "grant reform agenda," she contacted GAO to disclose that the agency was delaying its obligations under

---

[15] U.S. Gov't Accountability Off., GAO-05-335, Grants Management: Additional Actions Needed to Streamline and Simplify Processes (2005); U.S. Gov't Accountability Off., GAO-06-566, Grants Management: Grantees' Concerns with Efforts to Streamline and Simplify Processes (2006); U.S. Gov't Accountability Off., GAO-09-589, Grants Management: Grants.gov Has Systemic Weaknesses That Require Attention (2009); U.S. Gov't Accountability Off., GAO-11-478, Grants.gov: Additional Action Needed to Address Persistent Governance and Funding Challenges (2011).

[16] GAO-09-589 at 33-34.

[17] GAO-11-478 at 23-25.

[18] U.S. Gov't Accountability Off., GAO-13-383 at 13, Grants Management: Improved Planning, Coordination, and Communication Needed to Strengthen Reform Efforts (2013).

[19] *Id*. at 14-17.

Public Law 106-107, and that despite her seeking answers, agency officials would not explain why it was being delayed. HCD 1 at 22:17-25:14; 26:25-27:51 (testimony of the appellant).

¶58        Although grant law and policy are highly complex, the test of whether a disclosure is protected is not whether the administrative judge understands every nuance of the law. Here, given the appellant's particular responsibilities as well as GAO's ongoing work on this specific law, it seems quite clear that those involved in making and receiving the disclosure well understood the law's requirements. We thus find that the appellant had a reasonable belief under 5 U.S.C. § 2302(b)(8) that the agency had violated the law, and accordingly, that her November 2011 disclosure to GAO was protected.

¶59        Finally, the appellant alleged that on June 19, 2013, she filed a complaint with OSC disclosing that the agency's Controller provided erroneous guidance in 2011 that resulted in billions of dollars in undisbursed balances not being returned to the Treasury, and that her first-line supervisor tried to have her cover up, including through congressional testimony, the fact that the guidance stemmed from an agency error. IAF, Tab 1 at 8. Even though the administrative judge did not address this disclosure, we find that the appellant has provided sufficient evidence and argument to establish that she had a reasonable belief that the agency had violated the law and therefore, that this disclosure was protected.

¶60        Because we find that all of the aforementioned disclosures were both made and protected, the administrative judge must on remand determine whether any of the disclosures was a contributing factor in the agency's decision to remove the appellant.[20]

---

[20] To the extent it is necessary to do so, we find that the appellant did in fact file two complaints with OSC on November 12, 2012, and June 19, 2013, as she asserted. In the appeal form that the appellant's then-attorney signed on the appellant's behalf, she stated that the appellant filed these OSC complaints. By the attorney's signature, she attested to the truth of her statements. IAF, Tab 1 at 2, 40-41. *See Chambers v.*

*The administrative judge improperly analyzed the appellant's June 2013 OSC complaint and failed to fully analyze whether the November 2012 OSC complaint was a contributing factor in the appellant's removal.*

¶61    The appellant also alleged that her removal was in retaliation for the aforementioned protected activities, including her disclosures to various OIGs in the summer of 2012, her complaint to OSC in the fall of 2012, and her second complaint to OSC in the summer of 2013. The administrative judge found that the appellant's 2012 OSC and OIG disclosures were protected activity under 5 U.S.C. § 2302(b)(9)(C). ID at 25.[21] She found that the appellant's June 2013 OSC complaint was not protected because it did not contain a protected disclosure. ID at 23-24.

¶62    As indicated above, we find that the appellant's disclosures regarding Public Law 106-107 and section 872 of the NDAA for FY 2009 were, in fact, protected. Further, because "cooperating with or disclosing information to the Inspector General . . . of an agency, or the Special Counsel" is protected activity under 5 U.S.C. § 2302(b)(9)(C)—irrespective of whether an individual had a reasonable belief that she was disclosing wrongdoing—such a complaint would be protected regardless of its content.[22]    *See Special Counsel v. Hathaway,*

---

*Department of Homeland Security*, 2022 MSPB 8, ¶ 11 n.7 (considering, in the context of exhaustion, the evidentiary value of the certification on the MSPB Appeal Form as to the statements contained therein, if unrebutted). Additionally, the appellant provided testimony regarding her having filed the OSC complaints. HCD 1 at 26:30-27:43; 27:45-29:12; 1:44:24-1:46:03; 3:09:30-3:09:52; 29:04-30:01; 30:04-31:20; 1:41:00-1:44:20 (testimony of the appellant). We conclude that this evidence (the appellant's attorney's attestation and the appellant's hearing testimony, made under oath) suffices to establish that she filed these OSC complaints.

[21] The administrative judge referred to "the agency's OIG." ID at 25. The appellant's agency does not have an OIG. Rather, the appellant alleged that she made disclosures to the OIGs of various other agencies. HCD 1 at 27:51-30:04 (testimony of the appellant).

[22] During the pendency of this appeal, the National Defense Authorization Act for Fiscal Year 2018, Pub. L. No. 115-91, 131 Stat. 1283, was signed into law on December 12, 2017. It expanded the activities protected under 5 U.S.C.

49 M.S.P.R. 595, 612 (1991) (finding that section 2302(b)(9)(C) covers disclosures to OSC that do not meet the precise terms of actions described in section 2302(b)(8)), *recons. denied*, 52 M.S.P.R. 375, *aff'd*, 981 F.2d 1237 (Fed. Cir. 1992). Accordingly, the administrative judge must also determine on remand whether the appellant's June 2013 protected activities were a contributing factor in the agency's decision to remove her.

¶63    Although the administrative judge found that the appellant's 2012 communications with OIGs and OSC constituted protected activity, the administrative judge found that the appellant only proved that her alleged OIG activity was a contributing factor in her removal, and not the OSC activity. ID at 25-26. The appellant disputes this finding, pointing to the timing of her November 2012 OSC complaint in connection with her removal. PFR File, Tab 3 at 9-13. One way an appellant may establish the contributing factor criterion is the knowledge/timing test, under which an employee submits evidence showing that the official taking the personnel action knew of the disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. *Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶ 20 (2013). The Board has held that personnel actions taken within 1 to 2 years of the protected disclosure or activity satisfy the timing prong of the knowledge/timing test, but those that take place more than 2 years after the disclosure or activity are too remote to satisfy this test. *Id.*, ¶ 21.[23]

---

§ 2302(b)(9)(C) to include cooperating or disclosing information to "any . . . component responsible for internal investigations or review." Pub. L. No. 115-91, § 1097(c)(1)(A), 131 Stat. 1283, 1618. That expansion does not affect the outcome of this appeal because all of the relevant events occurred prior to December 12, 2017. *Edwards v. Department of Labor*, 2022 MSPB 9, ¶¶ 29-33 (finding that the changes to section 2302(b)(9)(C) do not apply retroactively).

[23] We defer to the administrative judge's determination on remand as to whether it is best to analyze section 2302(b)(8) and section 2302(b)(9)(C) together or separately in

¶64    The administrative judge found that the appellant did not prove that her first- and second-line supervisors had knowledge of her November 2012 OSC complaint. ID at 26 n.14. She found the appellant's testimony that an OSC investigator told the appellant she had spoken with agency management generally regarding the complaint was not sufficient to prove contributing factor. *Id.* On review, the appellant asserts that in 2013, OSC "notifie[d] affected managers of [her] 2012 complaint." PFR File, Tab 3 at 11. We agree with the administrative judge's finding that this allegation is insufficient to establish knowledge of the 2012 OSC complaint. *See Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 6 (2016); *Rebstock Consolidation v. Department of Homeland Security*, 122 M.S.P.R. 661, ¶ 12 (2015) (concluding that vague, conclusory, and unsupported allegations do not meet even the nonfrivolous allegation jurisdictional standard for whistleblower retaliation claims).

¶65    If the appellant fails to satisfy the knowledge/timing test, the administrative judge shall consider whether the appellant proved contributing factor through other evidence, such as that pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing or protected activity was personally directed at the proposing or deciding officials, and whether these individuals had a desire or motive to retaliate against the appellant. *Powers v. Department of the Navy*, 69 M.S.P.R. 150, 156 (1995). Here, the administrative judge did not do so. ID at 25-26 & n.14. Accordingly, on remand, the administrative judge shall consider whether the appellant proved contributing factor through this other evidence. *See Powers*, 69 M.S.P.R. at 156.

*The administrative judge must reevaluate the Carr factors.*

¶66    The appellant testified that she told her first-line supervisor of her disclosures to the OIGs around the time she made them in June 2012. HCD 1

---

deciding if one or both was a contributing factor in the agency's decision to remove the appellant.

at 31:26-32:53 (testimony of the appellant). Because the administrative judge found that this testimony was not "specifically" disputed, she concluded that the appellant met the knowledge/timing test as to this activity. ID at 26. This finding is undisputed on review, and accordingly, we will not disturb it.

¶67 The administrative judge found that the agency met its burden to show by clear and convincing evidence that it would have removed the appellant absent her OIG disclosures. ID at 26-28. This finding must be reassessed based on our reversing the removal and remanding for further findings on the appellant's various disclosures and protected activity.

¶68 In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). On remand, the administrative judge shall consider whether reversing the sole charge of unacceptable performance affects her determination that the agency met its burden, particularly as to the first *Carr* factor.

¶69 Regarding the second *Carr* factor, the administrative judge found there was no evidence that the appellant's first- or second-line supervisors were "personally . . . the subject of" the appellant's disclosures. ID at 27-28. As indicated above, the administrative judge did not consider the appellant's June 2013 disclosure to OSC that her first-line supervisor asked her to cover up, including through congressional testimony, the fact that erroneous 2011 guidance from the agency's Controller resulted in billions of dollars in undisbursed balances not being returned to the Treasury. The appellant's disclosures regarding section 872 of the NDAA for FY 2009 also appear to have implicated

her first-line supervisor, as the appellant apparently believed one reason the agency failed to issue the required regulations was this supervisor's recommendation to "delay indefinitely the issuance of the FAPIIS rule." IAF, Tab 10 at 410. On remand, the administrative judge should consider more closely this and any other similar evidence.

¶70    The administrative judge also appears to have improperly limited her analysis of the agency's motive to retaliate to whether these officials were personal subjects of the appellant's disclosures. The administrative judge also should consider whether the appellant's disclosures reflect on the appellant's supervisors in their capacities as managers and employees, which may be sufficient to establish a substantial retaliatory motive. HCD 2, Track 1 at 3:23:02-3:28:59 (testimony of the appellant's supervisor); *see Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 33 (2013) (finding, in analyzing the second *Carr* factor, that while the appellant's supervisors were not directly implicated by the disclosures, the appellant's criticisms nonetheless reflected on their capacity as managers and employees).

## The administrative judge did not abuse her discretion in denying the appellant's motions to compel.

¶71    The Board's regulations contemplate that parties may serve both initial and follow-up discovery requests. 5 C.F.R. § 1201.73(d)(2). Any follow-up request generally must be served within 10 days of the date of service of the prior response. *Id.* Any motion for an order to compel must be filed with the administrative judge within 10 days of the date of service of the opposing party's response or, if there is no response, within 10 days after the response time has expired. 5 C.F.R. § 1201.73(d)(3). An administrative judge has broad discretion in ruling on discovery matters, and absent an abuse of discretion, the Board will not find reversible error in such rulings. *Kingsley v. U.S. Postal Service*, 123 M.S.P.R. 365, ¶ 16 (2016).

¶72     In this case, the appellant filed motions to compel on August 4 and 14, 2014.  IAF, Tabs 18, 20.  The administrative judge denied the August 4, 2014 motion as untimely because it was not filed within 10 days of the agency's discovery response.  IAF, Tab 23 at 2-4; *see* 5 C.F.R. § 1201.73(d)(3).  She denied the August 14 motion because the appellant served the underlying follow-up discovery request more than 10 days after the agency's response to her first discovery request.  IAF, Tab 23 at 4.

¶73     The appellant challenges these rulings on review, arguing that her August 4, 2014 motion to compel and her follow-up discovery request were timely under the terms of a suspension order in which the administrative judge advised the parties that any motion to compel must be filed within 10 days of the appeal's reinstatement.  PFR File, Tab 3 at 33-34; IAF, Tab 13 at 1-2.  However, we agree with the administrative judge that, read in context, the suspension order did not extend these deadlines.  IAF, Tab 23 at 4-5.  The administrative judge provided that the parties were to "actively engage in discovery" and any motions to compel should be filed "during the suspension period."  *Id.* at 1.  She then provided that the outside deadline for filing motions to compel was within 10 days after the appeal's reinstatement.  *Id.* at 2.  We therefore find that the administrative judge did not abuse her discretion in denying the motions to compel.

¶74     The appellant also appears to argue that the administrative judge abused her discretion in denying the August 14, 2014 motion to compel because she did not set a deadline for the end of discovery.  PFR File, Tab 3 at 33.  Because the administrative judge denied the motion based on the appellant's untimely service of her follow-up discovery request, and not the deadline for the end of the discovery period, we decline to address this argument.

¶75     In sum, this case must be remanded to the regional office for further adjudication of the appellant's claims of discrimination based on race, color, and

disability, and her claims of reprisal for EEO activity, protected disclosures, and protected activity under the WPA as amended.[24]

ORDER

¶76      Accordingly, the initial decision is REVERSED IN PART, and the case is REMANDED for further adjudication.

¶77      Notwithstanding the remand proceedings on the appellant's discrimination and retaliation claims, we ORDER the agency to cancel the appellant's removal and restore her retroactive to March 7, 2014. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must accomplish this action no later than 20 days after the date of this decision.

¶78      We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶79      We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

---

[24] The Board's regulations provide that a request for attorney fees must be made within 60 days after issuance of a final decision, 5 C.F.R. § 1201.203(d). In this case, the time limit for filing such a request will not begin to run until the decision on remand is final. *See Aldridge v. Department of Agriculture*, 111 M.S.P.R. 670, ¶ 23 n.4 (2009).

¶80      No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision in this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶81      For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

FOR THE BOARD:


/s/
_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1.  Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.  The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63).
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.  Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.  Outside earnings documentation statement from agency.
4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.