# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

FELIPE DIMAYUGA,
        Appellant,

        v.

DEPARTMENT OF THE NAVY,
        Agency.

DOCKET NUMBER
DC-0432-15-0977-I-1

DATE: July 25, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

Lalit K. Jain, Esquire, Rego Park, New York, for the appellant.

Justin P. Sacks, Falls Church, Virginia, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## REMAND ORDER

The appellant has filed a petition for review of the initial decision, which sustained his removal. For the reasons discussed below, we GRANT the petition for review, VACATE the initial decision, and REMAND the case to the Washington Regional Office for further adjudication in accordance with this

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

Remand Order and *Santos v. National Aeronautics and Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021).

## BACKGROUND

¶2      The essential facts in this appeal, as set forth by the administrative judge and not contested on review, are that the appellant occupied a GS-15 Occupational Health Physician position. Initial Appeal File (IAF), Tab 28, Initial Decision (ID) at 1-2. On March 25, 2013, he was placed on a Focused Professional Practice Evaluation (FPPE), which served as a performance improvement plan (PIP), based on his failure to achieve a successful performance level in the physician care and professional development critical elements of his position. ID at 2. The FPPE was in place from March 24 until August 22, 2013. *Id.* The agency removed the appellant from his position effective January 31, 2014, based on his unacceptable performance in the two critical elements of his position. *Id.*; IAF, Tab 7 at 14-16, 23-25. The appellant contested the agency actions by filing an equal employment opportunity (EEO) complaint alleging discrimination based on race, national origin, sex, age, religion, and reprisal for prior EEO activity. ID at 2; IAF, Tab 7 at 8-11. Following the issuance of a final agency decision, the appellant timely filed an appeal with the Board. IAF, Tab 1.

¶3      After holding the appellant's requested hearing, the administrative judge found that the Office of Personnel Management (OPM) had approved the agency's appraisal plan, the agency established that the appellant's performance standards were valid and were communicated to him, and the appellant was given a reasonable opportunity to improve his performance by being place on the FPPE. ID at 4-10. The administrative judge also found that during the improvement period, the appellant failed to meet the physician care and professional development critical elements of his position. ID at 10-14. She found further that the appellant failed to prove his affirmative defenses of discrimination on the bases of race, national origin, sex, age, religion, and disability, and reprisal for prior EEO activity, and that he failed to prove that the agency committed harmful

procedural error by not allowing him to view the charts that it alleged contained errors. ID at 14-31. The appellant filed a petition for review. Petition for Review (PFR) File, Tab 3. The agency responded to the appellant's petition and he replied to the agency's response. PFR File, Tabs 5-6.

¶4     In his petition for review, the appellant concedes that the agency established that OPM had approved the agency's appraisal plan. PFR File, Tab 3 at 9. He also acknowledges that the agency established that his performance standards were valid and that they were communicated to him, *id.*, but subsequently in his petition for review contests those findings, and many other findings, as conclusory, *id.* at 16. He also argues that the agency did not give him a reasonable opportunity to improve his performance because he was not allowed to review the charts upon which it based the removal action, and that his performance was acceptable. *Id.* at 13, 16-20. He also contends that the administrative judge erred in her findings regarding discrimination, reprisal for prior EEO activity, and harmful error.[2] *Id.* at 18-20.

### DISCUSSION OF ARGUMENTS ON REVIEW

¶5     As noted above, consistent with the Federal Circuit's decision in *Santos*, 990 F.3d at 1360-63, we are remanding this appeal for further adjudication. In *Santos*, the court held for the first time that, in addition to the elements of a chapter 43 case set forth by the administrative judge and discussed below, an agency must also show that the initiation of a PIP was justified by the appellant's unacceptable performance before the PIP. *Id.* Prior to addressing the remand, however, we address the administrative judge's findings on the elements of a

---

[2] Attached to the appellant's petition for review is a treatise written by the appellant's counsel regarding the "Judicious Positioning System," a theory that "Helps Injustice Doers Pay to Insure Justice," and a copy of a transcript of a traffic court proceeding that the appellant's counsel won for his client. PFR File, Tab 3, Attachments. These attachments are immaterial to the disposition of the appellant's petition for review.

chapter 43 appeal as they existed at the time of the initial decision and the appellant's arguments on review.

¶6      At the time the initial decision was issued, the Board's case law stated that, in a performance-based action under 5 U.S.C. chapter 43, an agency must establish by substantial evidence[3] that:  (1) OPM approved its performance appraisal system and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of his position at the beginning of the appraisal period; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(b)(1); (4) the agency warned the appellant of the inadequacies of his performance during the appraisal period and gave him a reasonable opportunity to demonstrate acceptable performance; and (5) the appellant's performance remained unacceptable in one or more of the critical elements for which he was provided an opportunity to demonstrate acceptable performance.  *See* 5 U.S.C. §§ 4302(b), 7701(c)(1)(A); *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 5 (2010); 5 C.F.R. § 432.104.[4]

The agency proved the basis of the chapter 43 performance-based removal action by substantial evidence under pre-*Santos* law.

¶7      Here, there is no dispute that the removal was effected under a performance appraisal system approved by OPM.  To the extent that the appellant asserts that his performance standards are not valid and that they were not communicated to

---

[3] The agency's burden of proof in an action taken under chapter 43 is "substantial evidence," defined as the degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree.  5 C.F.R. § 1201.4(p).  This is a lower burden than preponderant evidence.

[4] During the pendency of this appeal, the Office of Personnel Management revised 5 C.F.R. § 432.104, Probation on Initial Appointment to a Competitive Position, Performance-Based Reduction in Grade and Removal Actions and Adverse Actions, 85 Fed. Reg. 65,940, 65,982-83 (Oct. 16, 2020).  Where the revised regulations are different from those in effect at the time of the appellant's removal in 2014, we have applied the 2014 version of the regulations.

him, his assertion is unavailing. He has presented no evidence in support of his assertion and the record contradicts it.

¶8    The first agency standard at issue here is the appellant's critical element (CE), entitled "Physician Care." This CE required the appellant to do the following:

> Provide[], direct[], and ensure quality patient care [in agreement with the agency's] policies and procedures. Conduct[] all medical surveillance and certification programs and examinations within the guidelines of Navy . . . review programs per peer review guidelines and make changes when indicated by higher authority. Provide[] various type of pre-placement physical examination, return to work evaluations, fitness for duty in accordance with Federal/Navy Regulations. Provide prompt recognition evaluation and treatment of life and limb, traumatic, and medical/surgical emergencies within the scope of practice, clinical privileges and the limitation of the facility.

IAF, Tab 25 at 4.

¶9    The second agency standard at issue here is the appellant's CE entitled "Professional Development." This CE required the appellant to do the following:

> Maintain evidence based practices standards by acquiring 50 [Continuing Medical Education activities] within the rating period. Maintain[] all required certifications needed to perform patient care activities within the assigned area. Meet all mandatory hospital training and educations requirements during this rating period.

*Id.*

¶10    Additionally, the agency's CE performance standards identified its "expectation for employee performance" for the appellant as "expert." Acceptable performance for an "expert" requires that he:

> Deliver[] on each critical element with broad and significant impact that was in alignment with the mission and objectives of the organization as well as applicable authorities, standards, policies, procedures and guidelines anticipating and overcoming significant obstacles.

> Establish[] priorities and coordinate[] work across projects, programs or people, balancing work demands and anticipating and overcoming obstacles to achieve a timely and positive outcome.

> Demonstrate[] high standards of professional conduct and represent[] the organization or work unit effectively.

*Id.* at 3. Unacceptable performance results when an employee who is an "expert":

> Failed to achieve all or part of the stated critical element; or

> Failed in the accomplishment of priorities and coordination of work across projects, programs or people; consistently failed to balance work demands resulting in an untimely and unproductive product or event; or

> Demonstrated poor cooperation or inability to work with others.

*Id.*

¶11     We agree with the administrative judge that the appellant's performance standards are detailed and define the levels of performance and those definitions apply to all of the critical elements. ID at 7. Thus, we find that the appellant was given a "firm benchmark" toward which to aim his performance, the standards permitted the accurate evaluation of his job performance based on objective criteria, and the elements properly considered sufficient objective and measurable factors. *Id.*; *see Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 21 (2013) (stating that performance standards should be specific enough to provide an employee with a firm benchmark toward which to aim performance and must be sufficiently precise so as to invoke general consensus as to their meaning and content); *see also Neal v. Defense Logistics Agency*, 72 M.S.P.R. 158, 161 (1996). The appellant occupied a high-level professional position. The Board has recognized that the degree of objectivity and specificity required in performance standards depends on the nature of the job involved and that professional and technical jobs, which require the incumbent to exercise greater discretion and independence, are not susceptible to performance standards that are strictly objective, and the standards for such positions may require a degree of subjective judgment that would not be necessary or proper in a position of a less professional or technical nature. *See Greer v. Department of the Army*, 79 M.S.P.R. 477, 483 (1998).

¶12     We also agree with the administrative judge that the agency met its burden of proving by substantial evidence that the critical elements at issue are reasonable, realistic, attainable, clearly stated in writing, and permitted the accurate evaluation of job performance based on objective criteria.  ID at 7. Further, the performance standards informed the appellant of what was necessary to achieve an acceptable or an unacceptable rating.  *Id.*  Therefore, we find that the agency established that the appellant's performance standards are valid.

¶13     Also, the appellant's performance standards were communicated to him.  As the administrative judge found, the performance plan for the appellant's position clearly informed him of what was required to achieve an acceptable performance rating in his position.  ID at 7; IAF, Tab 25 at 1.  It appears that in November 2012,[5] the appellant signed and acknowledged receipt of his performance plan elements and standards.  IAF, Tab 25 at 1.  He again signed the document on April 23, 2013, for his mid-year progress review.  *Id.*  Therefore, we find that the agency established that the appellant's performance standards were communicated to him.

¶14     The appellant contends that the agency did not give him a reasonable opportunity to improve.  Before initiating an action for unacceptable performance under 5 U.S.C. § 4303, an agency must give the employee a reasonable opportunity to demonstrate acceptable performance.  *Greer*, 79 M.S.P.R. at 480. OPM's regulations governing performance-based actions provide that "[a]s part of the employee's opportunity to demonstrate acceptable performance, the agency shall offer assistance to the employee in improving unacceptable performance." 5 C.F.R. § 432.104 (2014); *see Gjersvold v. Department of the Treasury*, 68 M.S.P.R. 331, 336 (1995).  The employee's right to a reasonable opportunity to improve is a substantive right and a necessary prerequisite to all chapter 43 actions.  *Lee*, 115 M.S.P.R. 533, ¶ 32; *Sandland v. General Services*

---

[5] The appellant electronically signed the document without providing a date for his signature.  Both rating officials signed for the document on November 26, 2012.

*Administration*, 23 M.S.P.R. 583, 590 (1984). In determining whether the agency afforded the appellant a reasonable opportunity to demonstrate acceptable performance, relevant factors include the nature of the duties and responsibilities of his position, the performance deficiencies involved, and the amount of time that is sufficient to enable him to demonstrate acceptable performance. *Lee*, 115 M.S.P.R. 533, ¶ 32.

¶15    Here, the agency documented the appellant's substantial performance deficiencies and gave him an opportunity to improve prior to the agency taking a removal action under chapter 43. The agency started a review of the records that the appellant put into the Armed Forces Health Longitudinal Technology Application (AHLTA), the electronic medical record system used by Department of Defense medical providers, following an incident on March 18, 2013, when it discovered that he had cleared a Naval Criminal Investigative Service agent, who was diabetic and on an insulin pump, for deployment to a war zone where insulin pumps were not permitted. During a review of all of the medical records created by the appellant regarding radiation medical examinations (RME) in February and early March 2013, the agency found that his AHLTA notes were incomplete and did not meet the requisite standard of care. For instance, the agency charged that the appellant did not use the correct template and he did not ask about or comment on required questions. Further, agency guidance required that RMEs be signed off by an officer with certain qualifications that the appellant did not possess. Two other patients—in the records reviewed by the agency—had been found physically qualified by the appellant even though their history of cancer would have automatically disqualified them.

¶16    As a result, the appellant was placed on an FPPE during which he would be subject to peer review and additional monitoring. IAF, Tab 7 at 28-31. Agency officials explained to the appellant that he was being placed on the FPPE because he had demonstrated practice problems including poor understanding and implementation of guiding regulations and standards and poor or improper

documentation of physical exams. *Id.* at 28. Initially, the FPPE was scheduled for 3 months, and later extended for 2 more months, until August 22, 2013. IAF, Tab 7 at 28-31. Furthermore, the record shows that the appellant was mentored during the evaluation period by two employees who provided him with feedback, citing specific examples of his deficiencies. ID at 10. Under these circumstances, we find that the agency properly warned the appellant of the inadequacies of his performance and gave him a reasonable opportunity to improve.

¶17        The administrative judge found that the agency established that, during the improvement period, the appellant failed to meet the physician care CE because he cleared a diabetic patient with an insulin pump to deploy to a war zone where military personnel with insulin pumps were not permitted, and cleared individuals with a history of cancer as physically qualified when cancer was an automatic disqualification. ID at 11. The agency explained that these mistakes happened prior to March 25, 2015, the start date of the FPPE. IAF, Tab 7 at 23; IAF, Tab 26, Hearing Compact Disc (HCD) (testimony of former Director for Branch Clinics, Naval Health Clinic, Quantico, Virginia). Thus, these were incidents of unacceptable performance that occurred before the agency placed the appellant on the FPPE.

¶18        If an employee demonstrates acceptable performance during the opportunity to improve period, the agency may not remove him based solely on deficiencies which preceded and triggered the improvement period. *Thompson v. Department of the Army*, 122 M.S.P.R. 372, ¶ 11 (2015); *Brown v. Veterans Administration*, 44 M.S.P.R. 635, 640 (1990). The administrative judge noted that, generally, the proposed removal specified the appellant's performance deficiencies; however, we find that she erred in sustaining the appellant's removal solely on the basis of the agency's evidence of pre-FPPE performance deficiencies rather than its evidence that he did not successfully complete the FPPE. ID at 10-14.

Therefore, we have re-examined the record to determine whether the appellant demonstrated acceptable performance during the FPPE period.

¶19 The notice of proposed removal specified the appellant's performance deficiencies. IAF, Tab 7 at 23, 28-31. When the appellant was placed on the FPPE, agency officials explained to him that they were concerned about his poor decisions regarding deployment exams, and his other shortcomings. *Id.* They also informed the appellant that he could not perform RMEs until a peer monitored him performing that test and he received the applicable approval. *Id.*

¶20 During the FPPE, two peers carefully monitored the appellant and recorded his progress. *Id.* at 29-31. On April 3, 2013, they informed the appellant that all of his RME patients' records needed to be pulled, lab tests reviewed, and abnormal lab tests repeated. *Id.* at 29. On April 8, 2013, they noted that the appellant conducted a physical exam that did not meet the standard of care and on April 9, 2013, they noted that he performed an RME without supervision, in violation of both the FPPE and standard agency practice. *Id.* at 29-30. On April 10, the appellant's peer reviewers noted that the appellant did not close out notes concerning patients that he saw in the clinic, and on April 25, they observed that he continued to make the same mistakes that caused him to be placed on the FPPE, including that: allergies were not being verified in AHLTA; current medications were not noted; and medical tests were not being interpreted consistent with guidance. *Id.* at 30. On May 6, 2013, they noted that the appellant had not completed the treatment record of one patient who visited the clinic with acute chest pain, and on May 7, they noted that a clinic patient was transported for chest/neck pain and the appellant failed to complete the treatment record. *Id.* On May 9, the appellant's peer reviewers noted that he failed to mark as not physically qualified a diabetic patient with hypertension. *Id.* On June 7, they noted concerns with the appellant's performance and stated that after 2 months on the FPPE, there was "no significant improvement" since the time they provided him the results from the first month. *Id.* at 31. On June 19, the

peer reviewers noted that the appellant had not demonstrated clinical competency and set forth nine specific areas of concern, including his poor understanding of governing regulations, standards and instructions and an increased number of patient records not up to standards. *Id.* Based on our review of this evidence, we find that the agency presented substantial evidence that the appellant's performance during the opportunity period was unacceptable. To the extent that the administrative judge erred in relying on evidence of unacceptable performance that preceded the appellant's placement on the FPPE to sustain the agency's action, the error did not affect the appellant's substantive rights. The administrative judge's ultimate conclusion, that the agency proved by substantial evidence that the appellant's performance was unacceptable, was correct. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (stating that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

¶21    The appellant's argument on review that the initial decision is conclusory is not supported by the record. ID. Furthermore, such a general claim does not identify specific errors in the initial decision and presents no reason to disturb the initial decision. *Gonzalez v. Department of Transportation*, 109 M.S.P.R. 250, 257 (2008) (finding no basis to disturb an initial decision when the petition for review failed to identify specific errors in the initial decision); *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions).

¶22    The appellant's assertion that he was authorized to perform RMEs because he had taken a radiation exam in 1995 is unavailing. He failed to submit any evidence to show that he had taken this exam or that it qualified him to perform RMEs in 2013. In any event, even if he had taken such an exam, he did not establish that he followed agency guidance for RMEs, and failing to follow that guidance formed the basis of the agency's forbidding him to perform RMEs

during the FPPE.  Similarly, his claim that he was unable to complete his medical records and other duties because of computer and staffing issues is not supported by the record.  The administrative judge noted that the proposing official testified that the appellant was the only physician with a full-time nurse and an occupational health technician assigned to him, and thus he had more support than any other physician.  ID at 11-12; HCD (testimony of the proposing official).

¶23      In sum, we find that the agency met its burden to show by substantial evidence that the appellant failed to successfully complete the FPPE.  While the agency relied on performance deficiencies which occurred during the year preceding the notice of proposed action, it also showed that the appellant failed to demonstrate acceptable performance after having received a reasonable opportunity to do so.  The evidence presented below shows that the appellant did not display acceptable performance during the FPPE, and suggests that it may have been unacceptable prior to the FPPE.  Nevertheless, as further explained below, we must remand this appeal in accordance with *Santos*.

We discern no error in the administrative judge's finding that the appellant failed to prove his affirmative defenses.

¶24      The appellant's assertion that the agency committed harmful procedural error because it did not allow him to review the charts upon which it based the removal action is unavailing.  To prove harmful procedural error, an appellant must prove that the agency committed an error in applying its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error.  *See* 5 C.F.R. § 1201.4(r).  Assuming, without finding, that the agency's procedures required it to make the charts available to the appellant, he has not submitted evidence or argument to show that his reviewing the charts would have caused the agency to reach a different conclusion about whether his performance was unsuccessful.  The agency informed the appellant of the specific content of the charts that it relied on

to charge him with unsuccessful performance, and with that chart content, the agency met its burden to prove that his performance was unsuccessful.

¶25       Finally, we agree with the administrative judge that the appellant failed to prove his affirmative defenses of discrimination. ID at 14-40. The appellant identified his race, national origin, religion, and sex, but he did not provide any direct or circumstantial evidence to support any of his claims of discrimination. *See Gardner v. Department of Veterans Affairs*, 123 M.S.P.R. 647, ¶¶ 27-32 (2016) (determining that there was no evidence that the appellant's removal was motivated by her race or sex), *clarified by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-24. In support of his claim of age discrimination, the appellant testified that when one of his peer reviewers began working with him, the reviewer asked him when he planned to retire. HCD (testimony of the appellant). The appellant failed to provide any other evidence to support his assertion that the comment evidenced age discrimination. Thus, the appellant failed to prove his affirmative defense of age discrimination. *See Wingate v. U.S. Postal Service*, 118 M.S.P.R. 566, ¶¶ 7-9 (2012) (finding that, because the appellant's evidence did not establish that age was a factor in the agency's actions, she failed to prove her age discrimination claim). The appellant also failed to prove reprisal for prior EEO activity. Although he showed that he previously had filed an EEO complaint and that it was likely that his managers were aware of his EEO activity, the appellant failed to establish a nexus between the removal action and his EEO activity. *See Cloonan v. U.S. Postal Service*, 65 M.S.P.R. 1, 4 (1994) (finding that to establish a prima facie case of reprisal for EEO activity, the appellant must show that:  (a) he engaged in protected activity; (b) the accused official knew of the protected activity; (c) the adverse employment action under review could have been retaliation; and (d) there was a genuine nexus between the retaliation and the adverse employment action). Regarding the appellant's claim that the administrative judge erred in addressing his claim of disability discrimination, we find that, to the extent that it was error

for her to address this claim, the appellant failed to show that her adjudicatory error harmed his substantive rights. *See Panter*, 22 M.S.P.R. 281, 282. We find no basis to disturb the administrative judge's conclusion that the appellant failed to show that discrimination and/or retaliation was a motivating factor in the decision to remove him.[6]

Remand is required under *Santos*.

¶26        Although the appellant has identified no basis for us to disturb the administrative judge's findings below, we nonetheless must remand this appeal for another reason. During the pendency of the petition for review in this case, the United States Court of Appeals for the Federal Circuit held in *Santos*, 990 F.3d at 1360-61, that, in addition to the five elements of the agency's case set forth in the initial decision, the agency must also justify the institution of a PIP by proving by substantial evidence that the employee's performance was unacceptable prior to the PIP. The Federal Circuit's decision in *Santos* applies to all pending cases, including this one, regardless of when the events took place. *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 16. Although the record in this appeal already contains evidence suggesting that the appellant's performance leading up to the PIP was indeed unacceptable, we remand the appeal to give the parties the opportunity to present argument and additional evidence on whether the appellant's performance during the period leading up to the PIP was unacceptable in one or more critical elements. *See Lee*, 2022 MSPB 11, ¶¶ 15-17. On remand, the administrative judge shall accept argument and evidence on this issue, and shall hold a supplemental hearing if appropriate. *Id.*, ¶ 17.

---

[6] Because we affirm the administrative judge's finding that the appellant failed to show that any prohibited consideration was a motivating factor in the agency's action, we need not resolve the issue of whether the appellant proved that discrimination or retaliation was a "but-for" cause of the agency's decisions. *See Pridgen*, 2022 MSPB 31, ¶¶ 20-22, 29-33.

¶27   The administrative judge shall then issue a new initial decision consistent with *Santos*. *See id.* If the agency makes the additional showing required under *Santos* on remand that the appellant's performance in at least one critical element was at an unacceptable level prior to his placement on the PIP, the administrative judge may incorporate her prior findings and the Board's findings here on the other elements of the agency's case and the appellant's affirmative defenses in the remand initial decision. *See id.* Regardless of whether the agency meets its burden, if the argument or evidence on remand regarding the appellant's pre-PIP performance affects the administrative judge's analysis of the appellant's affirmative defenses, she should address such argument or evidence in the remand initial decision. *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).

## ORDER

¶28   For the reasons discussed above, we remand this case to the Washington Regional Office for further adjudication in accordance with this Remand Order.


FOR THE BOARD:                              /s/ for
                                   _____
                                   Jennifer Everling
                                   Acting Clerk of the Board
Washington, D.C.