# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

ROBERT LEDOGAR,
      Appellant,

    v.

DEPARTMENT OF JUSTICE,
      Agency.

DOCKET NUMBER
NY-0752-20-0161-I-3

DATE: April 12, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

Howard B. Zakai, Esquire, and Raymond R. Granger, Esquire, New York, New York, for the appellant.

Cedric D. Bullock, Esquire, and Margo L. Chan, Esquire, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

## REMAND ORDER

The appellant has filed a petition for review of the initial decision, which sustained the agency's removal action. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

REMAND the case to the New York Field Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant was a Supervisory Deputy U.S. Marshal (SDUSM), who oversaw a group of 10 to 12 U.S. Marshals Service (USMS) personnel and, at times, directed a New York-New Jersey Regional Fugitive Task Force (Task Force), which consisted of USMS personnel and local and state law enforcement officers. *Ledogar v. Department of Justice*, MSPB Docket No. NY-0752-20-0161-I-3, Appeal File (I-3 AF), Tab 6 at 4; Hearing Transcript (HT) (testimony of the appellant). In 2014, Deputy U.S. Marshal (DUSM) D.M.,[2] one of the appellant's subordinates, filed complaints with the agency's Equal Employment Opportunity (EEO) office and Office of Professional Responsibility-Internal Affairs (OPR-IA), claiming that members of the Task Force had harassed her and discriminated against her. I-3 AF, Tab 6 at 5. The appellant was interviewed during the agency's investigation into these complaints, and he corroborated D.M.'s claims of harassment and discrimination.[3] *Id*. at 6; HT (testimony of the appellant). Shortly after his interview, V.M., a Task Force member D.M. accused of discrimination and harassment, aggressively confronted the appellant while off-duty, and accused him of betraying the Task Force. HT (testimony of the appellant).

In or around September 2015, the agency closed out its investigation, finding that D.M.'s claims were unsubstantiated. I-3 AF, Tab 6 at 6. That same month, Supervisory Inspector K.E., who oversaw the Task Force, and a Task Force contractor, F.L., contacted OPR-IA and accused the appellant of going through K.E.'s locked office and F.L.'s locked desk. *Ledogar v. Department of*

---

[2] Due to the number of individuals referenced in this order, we have used initials to minimize confusion.

[3] The appellant also personally confronted members of the Task Force regarding their treatment of D.M. HT (testimony of the appellant).

*Justice*, MSPB Docket No. NY-0752-20-0161-I-2, Appeal File (I-2 AF), Tab 10 at 309; HT (testimony of the appellant). OPR-IA investigated the claim (OPR-IA Case No. 15-0780), determined that there was insufficient evidence to support a finding of misconduct by the appellant, and closed out the matter without further action. I-2 AF, Tab 10 at 309.

Shortly after that case closed, the appellant was subjected to a second OPR-IA investigation (OPR-IA Case No. 16-0705) after V.M. accused him of using racial slurs and owning a gym with a convicted felon, J.D. *Ledogar v. Department of Justice*, MSPB Docket No. NY-0752-20-0161-I-1, Initial Appeal File (IAF), Tab 18 at 4-39; I-2 AF, Tab 10 at 329. Based on these allegations, the agency proposed the appellant's removal in March 2017. IAF, Tab 18 at 4-5. During the appellant's oral reply to the March 2017 proposed removal, the deciding official[4] notified the appellant that she had been contacted by B.E., the ex-girlfriend of the appellant's former partner, who accused the appellant of giving her a cell phone that he had allegedly stolen from an arrestee. HT (testimony of the appellant); IAF, Tab 12 at 171-72. The appellant responded to the allegations, providing, among other things, a letter from his former partner,[5] who accused B.E. of conspiring with members of the Task Force, who she had become friendly with during the course of their relationship, to make false allegations against the appellant.[6] IAF, Tab 12 at 171-72; HT (testimony of the appellant). On April 26, 2017, the deciding official in the March 2017 proposed removal found that the charges against the appellant were unsupported by the

---

[4] The deciding official in this current removal action is a different individual than the one who acted as the deciding official in the March 2017 proposed removal action. IAF, Tab 6 at 18, Tab 18 at 5.

[5] Because the record does not appear to contain a copy of the letter, we rely on the appellant's summary of the letter which was provided as part of his written reply submitted to the deciding official of the March 2017 proposed removal. IAF, Tab 12 at 171-72.

[6] It was also noted that B.E., a civilian, would not have known that there was a proposed removal pending against the appellant, nor would she have known who the deciding official was or how to contact her without help. IAF, Tab 12 at 171-72.

record, and issued the appellant a "letter of closure" notifying him that the agency had determined that the allegations underlying OPR-IA Case No. 16-0705 were unsubstantiated and closed out the matter. IAF, Tab 18 at 4-5.

In or around April 2017, OPR-IA opened up a third investigation against the appellant, OPR-IA Case No. 17-0576, based on a litany of accusations made by B.E, including stealing property and drugs from arrestees, using racial slurs, and misusing his Government vehicle.[7] *Id*. at 40-114. On January 21, 2020, OPR-IA closed out the matter, once again finding B.E.'s accusations unsubstantiated. *Id*. at 115-16.

During this timeframe, OPR-IA opened a fourth case against the appellant, OPR-IA Case No. 17-0183. HT (testimony of the appellant). The origins of that case, which led to the current removal action, are as follows: J.D., who was incarcerated, informed the appellant that he had information regarding a political corruption investigation of a local politician.[8] I-3 AF, Tab 6 at 7. The appellant contacted the U.S. Attorney's Office (USAO), which obtained a writ of habeas corpus authorizing J.D.'s removal from New York State custody to provide assistance with the investigation. *Id*. However, the New York Department of Corrections and Community Supervision (DOCCS) was not made aware of the exact circumstances surrounding J.D.'s release because of the sensitive nature of the investigation, and so it contacted the agency's Office of the Inspector General (OIG), questioning the appellant's role in J.D.'s release. IAF, Tab 12 at 211; HT (testimony of the appellant). In an attempt to clear up the situation, the USAO provided a letter to DOCCS regarding the circumstances of J.D.'s release, IAF, Tab 13 at 104-105, which was provided to OIG, IAF, Tab 12 at 210, and, on

---

[7] Although B.E. made the accusations, there is some suggestion that V.M. was behind B.E.'s accusations. IAF, Tab 13 at 608-09, 613, 662-63.

[8] The appellant had developed a relationship with J.D. after arresting him several times, such that J.D. would provide him with tips occasionally regarding criminal activities. HT (testimony of the appellant).

November 22, 2016, OIG notified OPR-IA that it considered the complaint to be a "management matter," *id.* at 206.

Nevertheless, OPR-IA opened an investigation into the matter, and interviewed the appellant on March 31, 2017, regarding the release of J.D. at the request of the USAO. IAF, Tab 13 at 247-95. OPR-IA did not interview the appellant again until 2019, when it interviewed him on April 17, April 18, and July 15, 2019. I-3 AF, Tab 6 at 6. The scope of these later interviews was substantially larger than the original scope of DOCCS's complaint, i.e., J.D.'s release, and encompassed issues including photos found on the appellant's Government-issued cell phone, the extent of his relationship with J.D., and his friendship with another individual, who was also a convicted felon. IAF, Tab 13 at 297-678.

On January 9, 2020, the agency proposed the appellant's removal based on the findings of OPR-IA Case No. 17-0183, charging him with the following: (1) conduct unbecoming a SDUSM (three specifications); (2) lack of candor (two specifications); (3) misuse of position (four specifications); (4) misuse of Government-owned vehicle (two specifications); (5) failure to follow instructions (one specification); (6) failure to follow USMS policy (two specifications); and (7) misuse of Government property-IT Device (three specifications). IAF, Tab 12 at 174-95. The deciding official removed the appellant from the Federal service, effective April 20, 2020, affirming charges 1-3 and 5-7, although she did not sustain all the specifications under charges 3, 6, and 7. IAF, Tab 6 at 8-18. The deciding official did not sustain charge 4. *Id*. at 12-13.

The appellant filed a Board appeal, alleging in part that his removal was in retaliation for his protected EEO activity, i.e., opposing the Task Force's discrimination and harassment of D.M. IAF, Tab 1 at 6, Tab 14 at 4-7. Specifically, the appellant accused the agency of targeting and pursuing investigations against him based on patently false allegations by Task Force members, and holding those investigations open for years "to conduct a fishing

expedition in hope of discovering grounds to remove [him]." IAF, Tab 14 at 15. The appellant further alleged that OPR-IA's Senior Inspector, D.N., "had a direct and open line of communication with USMS Deputy Director [D.D.] regarding the status of [the a]ppellant's open OPR-IA cases." *Id*. Senior Inspector D.N. was one of the inspectors assigned to investigate at least two of the appellant's cases, including the one that led to his removal. *Id*.

During discovery, the appellant filed a motion to compel, requesting that the administrative judge compel the agency to produce five witnesses for deposition, including D.D. and D.N., explaining that they were likely to have information regarding his retaliation defense. IAF, Tab 21 at 9-12, 16. The administrative judge granted the appellant's motion to compel in part, compelling the agency to produce the deciding official and the appellant's supervisor for deposition, but the administrative judge denied the appellant's request to compel the other witnesses, including D.N. and D.D., finding that their depositions were not likely to lead to the discovery of admissible evidence. IAF, Tab 28.

Then, on June 5, 2021, approximately 3 months after the parties filed prehearing submissions and just over 3 weeks before the hearing, the appellant filed a motion requesting to amend his prehearing submissions to add a newly discovered witness, E.T., who was a recently retired Senior Inspector in OPR-IA.[9] I-3 AF, Tab 5, Tab 7 at 7-11. The appellant explained that E.T. reached out to him in "mid-May 2021" and that, on May 26, 2021, he learned that E.T.: (1) had knowledge of communications between Senior Inspector D.N. and former Deputy Director D.D. concerning the appellant's cases and that the investigations into the appellant were considered "hot button issues" for the agency's executive

---

[9] The appellant also requested that the administrative judge compel the agency to produce documentation related to "evidence of disparate penalties . . . and evidence bearing directly upon [a]gency personnel's character for truthfulness and otherwise upon their credibility, bias, and retaliatory and other improper motive." I-3 AF, Tab 7 at 4-5. The administrative judge denied this request, finding that discovery ended, and that the individuals cited by the appellant were not valid comparators. I-3 AF, Tab 10. The appellant does not object to this portion of the administrative judge's ruling on review.

management; (2) had conversations with agency personnel, including Senior Inspector D.N., in which she learned that agency personnel were out "to get" the appellant and that Senior Inspector D.N. bragged that he "got" the appellant; and (3) believed, based on her communications and observations, that OPR-IA's investigations were motivated, "at least in part, by retaliatory animus . . . and that such animus stemmed from [the a]ppellant's support and defense of D.M. and [] exposing misconduct on the part of the Task Force, [Investigative Operations Division], and the USMS as a whole." I-3 AF, Tab 7 at 7-8. The administrative judge denied the appellant's motion in a one-page order, stating that discovery had ended and E.T.'s testimony was "not relevant to the issues before [her]."[10] I-3 AF, Tab 10.

After holding a hearing, the administrative judge issued an initial decision sustaining all the charges and specifications on which the agency action is based, except for charge 6, i.e., failure to follow USMS policy, and finding that the agency established nexus. I-3 AF, Tab 25, Initial Decision (ID) at 10-42. She denied the appellant's retaliation claim, finding that he "failed to submit any credible record evidence in support of his claims of EEO retaliation" and that there "simply was no merit" to the appellant's claim that OPR-IA's investigations were the result of false allegations fabricated by the Task Force members to retaliate against him. ID at 42-47. Thus, after finding that the agency had considered all relevant factors and that removal was within the bounds of reasonableness, the administrative judge affirmed the agency action. ID at 47-52.

The appellant has filed a petition for review, arguing, among other things, that the administrative judge abused her discretion when she denied his request to call E.T. as a witness, and when she denied his motion to compel the agency to

---

[10] After the first day of the hearing, the appellant filed a motion in limine for leave to call E.T. as a rebuttal witness and for a subpoena for her to appear, claiming that the agency "open[ed] the door to her testimony at the hearing" and that E.T. could rebut specific claims made by the agency's witness. I-3 AF, Tab 14. The administrative judge denied the appellant's motion in another one-page order, citing only to "the reasons indicated in the agency's [o]pposition." I-3 AF, Tab 16.

produce Senior Inspector D.N. for a deposition.[11]  Petition for Review (PFR) File, Tab 3 at 30-32.  The agency has responded in opposition, PFR File, Tab 5, and the appellant has replied to the agency's opposition, reiterating the arguments made in his petition for review, PFR File, Tab 6.

## DISCUSSION OF ARGUMENTS ON REVIEW

Although an administrative judge has wide discretion to control the processing of appeals, *Sanders v. Social Security Administration*, 114 M.S.P.R. 487, ¶ 10 (2010), such discretion is not unfettered.  However, to obtain a reversal of an initial decision on the grounds that the administrative judge abused her discretion on evidentiary matters, the appellant must show that relevant evidence, which could have affected the outcome, was disallowed.  *See id*.; 5 C.F.R. § 1201.115(c).  For the reasons explained below, we find that the administrative judge abused her discretion when she denied the appellant's request to call E.T. as a witness, and when she denied the appellant's request to compel the agency to produce Senior Inspector D.N. for a deposition.  Thus, we remand this appeal for further adjudication in accordance with the instructions set forth below.

<u>The administrative judge abused her discretion by denying the appellant's request to call E.T. as a witness at the hearing.</u>

We find that the administrative judge abused her discretion when she denied the appellant's request to call E.T. as a witness.  I-3 AF, Tab 10.  In doing so, we recognize that an administrative judge has wide discretion under the Board's regulations to exclude witnesses when it has not been shown that their testimony would be relevant, material, and nonrepetitious.  *Franco v. U.S. Postal Service*, 27 M.S.P.R. 322, 325 (1985); *see* 5 C.F.R. § 1201.41(b)(10).  However, the administrative judge's reasons for denying the appellant's request, i.e., that discovery had closed and E.T.'s testimony would not be relevant to the issues before her, are unsupported by the record.  I-3 AF, Tab 10.  The appellant

---

[11] The appellant does not object to the administrative judge's denial of the other four witnesses that he requested to depose.

claimed E.T. would testify that she knew that the Senior Inspector D.N. had a direct line of communication with Deputy Director D.D regarding his investigations into the appellant, that the investigations were "hot button issues" for agency executive management, that agency personnel were out to get the appellant, that Senior Inspector D.N. bragged that he "got" the appellant, and that the investigations were retaliatory. I-3 AF, Tab 7 at 7. E.T.'s testimony, on its face, is relevant to the appellant's claim of retaliation, which the administrative judge accepted as an issue before her in the prehearing conference order. *Id*.; I-2 AF, Tab 11 at 1-2. Further, although the appellant requested to add E.T. as a witness after discovery had closed, he provided good cause for the delay, namely, that he only learned of E.T.'s existence in May 2021, when E.T. reached out to him. I-3 AF, Tab 7 at 4, 7. Therefore, we find that there was no basis to exclude E.T. from testifying, especially in light of the compelling nature of her expected testimony.

In the initial decision, the administrative judge found that the appellant had failed to submit "credible evidence" in support of his retaliation claim. ID at 43. The administrative judge should not have excluded a witness whom the appellant indicated had relevant evidence in support of his claim of retaliation, only to then find that he failed to produce sufficient evidence to establish that claim. *See Gregory v. Federal Communications Commission*, 79 M.S.P.R. 563, ¶ 15 (1998) (finding that the administrative judge abused her discretion when she denied the appellant's request for witnesses that could support her claims of harassment and difficult working conditions, only to find that she did not establish those claims). Accordingly, we find that the administrative judge abused her discretion in denying the appellant's request to call E.T. as a witness.

<u>The administrative judge abused her discretion in denying the appellant's motion to compel the agency to produce Senior Inspector D.N. for a deposition.</u>

In addition to excluding E.T., the appellant argues that the administrative judge abused her discretion in denying his motion to compel the agency to

produce Senior Inspector D.N. for a deposition. PFR File, Tab 3 at 32. We agree with the appellant. Discovery is the process by which a party may obtain relevant information from another person or party that the other person or party has not otherwise provided. *Chandler v. Department of the Treasury*, 120 M.S.P.R. 163, ¶ 10 (2013); 5 C.F.R. § 1201.72(a). Relevant information includes information that appears reasonably calculated to lead to the discovery of admissible evidence. *Chandler*, 120 M.S.P.R. 163, ¶ 10; 5 C.F.R. § 1201.72(a). What constitutes relevant information in discovery is to be liberally interpreted, and uncertainty should be resolved in favor of the movant absent any undue delay or hardship caused by such request. *Chandler*, 120 M.S.P.R. 163, ¶ 10.

It is well established that administrative judges have broad discretion in ruling on discovery matters and, absent a showing of abuse of discretion, the Board will not find reversible error in such rulings. *Miller v. U.S. Postal Service*, 85 M.S.P.R. 494, ¶ 9 (2000). Here, we find that the administrative judge abused her discretion by taking an overly narrow view of discovery, and denying the appellant's request to compel the deposition of Senior Inspector D.N. IAF, Tab 28 at 3. From the outset of this appeal, the appellant asserted that his removal was in retaliation for his opposition to the discrimination and harassment suffered by D.M. IAF, Tab 1 at 6, Tab 14. As part of this claim, the appellant alleged that OPR-IA's investigations into him were retaliatory, and that Senior Inspector D.N. was part of that retaliatory effort. IAF, Tab 14 at 15. Thus, contrary to the administrative judge's ruling, the appellant's request to depose Senior Inspector D.N. was reasonably calculated to lead to the discovery of admissible evidence and the appellant should have had the opportunity to fully explore his claim. IAF, Tab 28 at 3.

As a result of the administrative judge's error, the appellant's ability to develop his retaliation claim was stunted, which necessarily influenced the administrative judge's conclusion that he failed to submit sufficient evidence of retaliation. ID at 43. Once again, we find that the administrative judge should

not have denied the appellant's request to depose a witness who was allegedly involved in the retaliatory scheme, only to then find that he failed to produce sufficient evidence in support of his retaliation claim. *See Miller*, 85 M.S.P.R. 494, ¶ 9 (finding that the administrative judge abused his discretion in not enforcing his order requiring the agency to produce discoverable information necessary for the appellant to prove her claim of disability discrimination). Accordingly, we find that the administrative judge abused her discretion in denying the appellant's motion to compel the agency to produce Senior Inspector D.N. for a deposition, which hindered his ability to fully develop his affirmative defense and meet his burden of proof.

Instructions for the administrative judge on remand.

On remand, the administrative judge is instructed to reopen discovery and allow the appellant to take the deposition of Senior Inspector D.N. Additionally, the administrative judge should allow both parties the opportunity to depose E.T. She should also allow the parties sufficient time and ample latitude to pursue relevant information learned from the depositions. This will include the opportunity to seek additional discovery based upon those new depositions, in accordance with 5 C.F.R. § 1201.73(d)(2). Upon the completion of the reopened discovery period, the administrative judge shall schedule a supplemental hearing on the appellant's retaliation claim, and allow the parties to call E.T. as a witness. The appellant shall also be allowed to call D.N. and any other relevant witnesses he learns of via his depositions of E.T. and D.N.[12] The administrative judge should then issue a new initial decision fully addressing the issues in this appeal. To the extent that additional discovery in this appeal leads to evidence relevant to the charges or the penalty, the administrative judge should reexamine those issues as well as the appellant's claim of retaliation. *See Spithaler v. Office of*

---

[12] The administrative judge shall also allow the parties to recall witnesses for the limited purpose of addressing information learned during the reopened discovery period.

*Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and her legal reasoning, as well as the authorities on which that reasoning rests).  On remand, the administrative judge should also apprise the appellant, in accordance with *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 21-24, 30 & n.5, of his burden of proof on the retaliation claim, including the different standards of proof, the type of relief available under each standard, and the various methods of proof available to him.

## ORDER

For the reasons discussed above, we remand this case to the New York Field Office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:                    _____

*Gina K. Grippando*

Gina K. Grippando
Clerk of the Board

Washington, D.C.